UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**MICHAEL GRASSO,**

    **Plaintiff,**

v.                                           Case No.: 4:21-cv-310-WS/MJF

**ARD CONTRACTING, an Alabama Corporation, DAN VARNER in his capacity as an FSU police officer, NICK (LAST NAME UNKNOWN) in his capacity as an FSU police officer, SCOTT POWELL in his capacity as WCSO deputy,**

    **Defendants.**

_____/

## MOTION TO DISMISS

Defendant, **SCOTT POWELL, in his capacity as Wakulla County Sheriff's Office Deputy**, through undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(6) and N.D. Fla. Loc. R. 7.1, moves to dismiss Plaintiff's Complaint against him and, in support, states:

1. Plaintiff, proceeding *pro se*, initiated this action in this Court on July 26, 2021 [ECF. 1]. The operative pleading, served on Deputy Powell, is Plaintiff's Second Amended Complaint filed November 19, 2021 [ECF. 9].

2. The Second Amended Complaint alleges three claims against Deputy Powell, all of which are related to Plaintiff's alleged purchase of and alleged attempt

to return stolen specialized survey equipment. The three claims are: Intentional Infliction of Emotional Distress (Count I), Illegal Search and Seizure (Count II), and False Imprisonment under Florida Law (Count III).

3. The pertinent allegations against Deputy Powell, as couched in Plaintiff's 2nd Amended Statement of Claim General Allegations, are as follows:

11. . . . Instead of DEFENDANT Ard showing up DEFENDANTS Varner and Nick showed up, neither in uniform and neither offering ID. Then a third officer, DEFENDANT Powell popped out and immediately handcuffed PLAINTIFF, without explanation.

***

13. DEFENDANT Powell kept PLAINTIFF handcuffed while DEFENDANTS Varner and Nick ransacked PLAINTIFF'S truck. They took PLAINTIFF'S phone from his truck which is kept unlocked and started reading aloud PLAINTIFF'S personal text messages. PLAINTIFF protested the entire time, stating police had no right to go thru his phone and he had done nothing to be handcuffed for. Powell went on to threaten to impound PLAINTIFF'S service dog and have PLAINTIFF held in jail for 5 days in which time, his service dog could be euthanized.

14. Eventually, PLAINTIFF, for fear of the police erasing important messages that he would need to clear his name, acquiesced and showed them how to find the messages from the seller of the equipment thru the app, Offer-up, that the seller was using for selling the unit. Powell then took the handcuffs off PLAINTIFF so he could unlock his storage unit and retrieve the unit from five feet away. Varner then proceeded to search PLAINTIFF'S storage bin without a warrant, even after he was given the unit in question and told by PLAINTIFF to stay out of the storage unit.

***

16. DEFENDANTS Varner, Nick and Powell then refused to return PLAINTIFF'S phone and stated if he wanted it back he would have to go to the WCSO station to retrieve it. PLAINTIFF followed the police to the station and was made to sit for approximately 90 minutes without his phone nor view of his phone, while detectives went thru it in another room. Upon exiting the station, Detective Ed Wester said they would be returning PLAINTIFF'S money for purchasing the unit and gave PLAINTIFF his business card. Wester has since never answered a phone call and PLAINTIFF never got a dime of his money back or even a receipt for the equipment they seized.

[ECF. 9 at pp. 9-11].

4. Counts I and III should be dismissed against Deputy Powell in his individual capacity because Plaintiff has failed to allege any facts that Deputy Powell's actions rose to the heightened standard required by Florida's limited waiver of sovereign immunity, codified at Section 768.28, Florida Statutes, which requires enhanced factual allegations to sue a public employee individually.

5. Counts I and III should be dismissed against Deputy Powell in his official capacity because Plaintiff has failed to comply with Florida's presuit notice requirements, also codified in Florida's sovereign immunity statute.

6. Count I should be dismissed independently because a public entity cannot be liable for intentional infliction of emotional distress and the facts alleged by Plaintiff are insufficient to state a cause of action against Deputy Powell individually under Florida law.

7. Count II should be dismissed because Plaintiff has failed to identify, fur purposes of Section 1983 analysis, whether he is suing Deputy Powell in his official capacity or in his individual capacity, and has failed to plead the necessary elements of such a claim to impose liability.

8. Count II should be dismissed against Deputy Powell individually on the basis of qualified immunity.

**MEMORANDUM OF LAW**

In compliance with Local Rule 7.1(E), Deputy Powell submits this supporting memorandum of law.

**A. Legal Standard**

Rule 12 of the Federal Rules of Civil Procedure authorizes dismissal of a complaint for failure to state a claim upon which relief can be granted. *Fed. R. Civ. P.* 12(b)(6). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The mere possibility that the defendant acted unlawfully is insufficient. *Id.*, 556 U.S. at 678.

The complaint must include "[f]actual allegations ... [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, that is, "across the line from conceivable to plausible." *Id.*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678 (reiterating that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). A complaint also may be dismissed for failure to state a claim "when its allegations, on their face, show that an

affirmative defense bars recovery on the claim." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003).; *see also Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001).

Pro se complaints are held to less stringent standards than those drafted by an attorney. *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986) (citing *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972)). Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people ...." *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, (2005) (quoted in *Twombly*, 550 U.S. at 558).

### B. <u>Analysis</u>

This Court's subject matter jurisdiction is through a federal question – Count II an unlawful seizure against Deputy Powell in violation of the Fourth Amendment, vis-à-vis 42 U.S.C. § 1983. Counts I and III both assert state tort claims brought through this Court's supplemental jurisdiction. There is no diversity.

#### 1. Sovereign Immunity Bars Counts I and III

It is unclear whether Plaintiff is suing Deputy Powell in his individual capacity or in his official capacity; the latter would be a claim against Deputy Powell's employer, the Wakulla County Sheriff's Office. Either way, Plaintiff's Second

Amended Complaint is due to be dismissed based upon Florida's limited waiver of sovereign immunity codified in Chapter 768, Florida Statutes.

Article X, section 13 of the Florida Constitution provides: "Provision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating." In 1973, the legislature exercised its authority and enacted section 768.28, which provides a limited waiver of the state's sovereign immunity for tort claims. § 768.28(1), *Fla. Stat.* (2017). The statute authorizes tort claims against "[t]he state and its agencies and subdivisions," but limits the state's liability for such claims to $200,000. § 768.28(5), *Fla. Stat.* (2017).

a. *Official Capacity*

There is no question that Deputy Powell was working for the Sheriff's Office; Plaintiff acknowledges such in his Second Amended Complaint. However, in order to properly assert a claim against the Sheriff's Office, Plaintiff must comply with the statute's mandatory notice requirements.

Section 768.28(6), Florida Statutes, waives the state of Florida's sovereign immunity with respect to tort actions. To maintain a claim in tort against the State or one of its agencies, a plaintiff must meet the presuit notice requirements of section 768.28(6). The statute sets out mandatory procedures that one must follow before suing pursuant to the waiver. Section 768.28(6) states in pertinent part:

> (6)(a) An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the

7

claim in writing to the appropriate agency, and also, except as to any claim against a municipality, county, or the Florida Space Authority, presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing; ....

Further, because section 768.28(6) is part of a statutory waiver of sovereign immunity, "it must be strictly construed." *Levine v. Dade County School Bd.*, 442 So. 2d 210, 212 (Fla. 1983); *Menendez v. North Broward Hosp. Dist.*, 537 So. 2d 89, 91 (Fla. 1988). Proper notice under section 768.28(6) is a condition precedent to sue a municipality. *Broward Cty. Sch. Bd. v. Joseph*, 756 So. 2d 1077 (Fla. 4th DCA 2000). Also, the notice requirement of section 768.28(6) cannot be waived unless expressly authorized by statute. *Dukanauskas v. Metro. Dade Cty.*, 378 So. 2d 74, 76 (Fla. 3d DCA 1979). In *Menendez*, the Florida Supreme Court noted that section 768.28(6) "requires three things prior to instituting an action against a state agency":

> First, the claimant must present the claim to the agency in writing. Second, the claimant must present the claim to the Department of Insurance in writing. Third, the claim proffered to the Department must be presented within three years after it accrues and the agency or the Department denies the claim in writing.

*Menendez*, 537 So. 2d at 91.

Moreover, as a matter of pleading, Plaintiff must allege compliance with the notice provision, or subject his claims to dismissal. *Fletcher v. City of Miami*, 567 F. Supp. 2d 1389, 1393 (S.D. Fla. 2008). Nowhere in his Second Amended

8

Complaint does Plaintiff allege such compliance. As such, dismissal of Deputy Powell in his official capacity is appropriate for Counts I and III.

### b. Individual Capacity

Florida's sovereign immunity statute also provides that agents of the state acting within the scope of their employment have absolute immunity from tort claims:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function .....

*Fla. Stat.* §768.28(9)(a). Pursuant to that statute, Deputy Powell is entitled to absolute immunity unless he "

> acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

*Id*. "[W]anton" has been defined as "with a conscious and intentional indifference to consequences and with the knowledge that damage is likely to be done to persons or property." *Naso v. Hall*, -- So. 3d -- , 2022 WL 1397411, *4 (Fla. 4th DCA 2022) (quoting *Peterson v. Pollack*, 290 So. 3d 102, 110 (Fla. 4th DCA 2020)). "'Willful' means 'intentionally, knowingly and purposely.'" *Id*. "Bad faith" has been equated with the actual malice standard. *Id*. at 109 (quoting *Parker v. State of Fla. Bd. Of Regents ex rel. Fla. State Univ.*, 724 So. 2d 163, 167 (Fla. 1st DCA 1998)).

9

"Malicious purpose" means the conduct was committed with "ill will, hatred, spite, [or] an evil intent." *Peterson*, 290 So. 3d at 109 (quoting *Eiras v. Florida*, 239 F. Supp. 3d 1331, 1343 (M.D. Fla. 2017)).

"[I]n order for a plaintiff to succeed in piercing the statutory immunity defense, he must make a good faith allegation in the complaint that the public official either acted outside the scope of his employment or in bad faith. The statute places an affirmative duty on the plaintiff to satisfy this pleading requirement. This duty cannot be satisfied by mere conclusory allegations. Without support, the complaint must fail." *Brown v. McKinnon*, 964 So. 2d 173, 175 (Fla. 3d DCA 2007) (internal citations omitted).

In *Eiras*, an arrestee sued the Florida Department of Business and Professional Regulation and one of its agents. Relying on *Brown*, the court granted the agent's motion to dismiss, and held:

> Generally, courts are reluctant to strip officers of their immunity under section 768.28(9)(a) of the Florida Statutes. As such, a threadbare recital that a defendant "acted maliciously and in bad faith is conclusory" and insufficient. *Brivik*, 545 Fed.Appx. at 807. Additionally, the mere fact that an officer may have acted without probable cause is not enough to pierce the officer's immunity. *See Caldwell v. Nocco*, No. 8:14-cv-2167-T-30AEP, 2015 WL 9302835, at *5 (M.D. Fla. Dec. 22, 2015) (holding an officer immune from a false arrest claim under Florida law because even "[i]n cases in which an officer fails to prove arguable probable cause, he may still be immune from personal liability."). For example, in *Dunn v. City of Boynton Beach, Fla.*, 192 F. Supp. 3d 1310, 1325 (S.D. Fla. Jun. 14, 2016), the court determined that the allegation that an officer acted "in the absence of lawful authority" and "in the absence of reasonable suspicion" of

    criminal activity did not constitute an allegation that an officer acted in bad faith for purposes of Florida Statute section 768.28(9)(a). According to the court, not "every arrest lacking probable cause is made in bad faith" and "Florida's waiver of sovereign immunity clearly contemplates that an agent can commit a wrongful, and even intentional, act and still lack bad faith." *Id.*

*Eiras*, 239 F. Supp. 3d at 1344.

The allegations in Plaintiff's Second Amended Complaint fail to include the necessary factual elements to state a claim against Deputy Powell in his individual capacity and thereby pierce the immunity conferred by Florida law. Specifically, there are no factual allegations that Deputy Powell acted outside the scope of his employment, or with a malicious purpose, in bad faith, or willfully and wantonly. Therefore, Counts I and III should be dismissed.

### 2. Plaintiff has Failed to State a Claim in Count I

In order to state a cause of action for intentional infliction of emotional distress in Florida, a plaintiff "must establish that the conduct (1) was intentional or reckless, (2) outrageous, (3) caused emotional distress to plaintiff, and (4) the emotional distress was severe. *Bardelas v. City of Doral, Fla.*, Case No. 1:20-CV-24894-KMM, 2021 WL 2531074, at *4 (S.D. Fla. Apr. 15, 2021) (citing *Coulson v. City of Hialeah*, Case No. 09-CV-22911, 2010 WL 326053, at *6 (S.D. Fla. Jan. 21, 2010) (citing *Stewart v. Walker*, 5 So. 3d 746, 749 (Fla. 4th DCA 2009)). *See also Ball v. Heilig–Meyers Furniture Co.*, 35 F. Supp. 2d 1371, 1376 (M.D. Fla. 1999); *Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277 (Fla. 1985).

In *Metropolitan Life Insurance Co. v. McCarson*, 467 So. 2d 277, the Florida Supreme Court recognized the tort of intentional infliction of emotional distress, but only for extreme and outrageous conduct. The court adopted the Restatement's guidance on what constitutes sufficiently outrageous conduct, which stated, in relevant part:

> Extreme and outrageous conduct .... It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Id.* at 278-79 (quoting *Restatement (Second) of Torts* § 46 (1965)).

a. *Official Capacity*

The nature of such a claim and the facts necessary to state a *prima facie* case, however, compel the bar of sovereign immunity to be applied in favor of any public entity. *Weiland v. Palm Beach Cnty. Sheriff's Office,* 792 F.3d 1313, 1330 (11th Cir. 2015); *Bardelas, id.,* at *4; *see also Coulson,* 2010 WL 326053, at *6 (quoting *Samedi v. Miami-Dade Cnty.,* 134 F. Supp. 2d 1320, 1353 (S.D. Fla. 2001)). As such, any claim against Deputy Powell in his official capacity for intentional infliction of emotional distress is foreclosed.

### b. Individual Capacity

"[T]he issue of whether or not the activities of the defendant rise to the level of being extreme and outrageous so as to permit a claim for intentional infliction of emotional distress is a legal question ... for the court to decide as a matter of law." *Vance v. Southern Bell Telephone Co.*, 983 F.2d 1573, 1575, n. 7 (11th Cir.1993); *Tucci v. Smoothie King Franchises, Inc.*, 215 F. Supp. 2d 1295, 1303 (M.D. Fla. 2002). The required degree of extreme and outrageous conduct is high. *See McCarson*.

In *Casado v. Miami-Dade County*, 340 F. Supp. 3d 1320 (S.D. Fla. 2018), the plaintiff alleged (and body camera verified) that during a traffic stop and unprovoked by any action by the plaintiff, a detective attempted to slam the plaintiff's head into the hood of his car and repeatedly punched him in the face. The court found that the facts were insufficient to state a claim for intentional infliction of emotional distress. Id. at 1330. On the fourth element specifically, the court held, "In regards to the severity of the emotional distress, '[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.'" *Id.* (quoting *Frias v. Demings*, 823 F. Supp. 2d 1279, 1289 (M.D. Fla. 2011) (citing *Restatement (Second) of Torts* § 46, cmt. j. (1965)).

Here, the facts supporting any claim for intentional infliction of emotional distress against Deputy Powell individually are far less extreme than those found in

Casada. Even without Casada's guidance, the facts simply do not equate to the extreme circumstances or very high standard required for such a claim. Dismissal of Count I is therefore appropriate.

### 3. Plaintiff's Fourth Amendment Claim is Deficient

Plaintiff does not state in his complaint whether he is suing Defendant Powell in his official or individual capacity. Regardless, to the extent Plaintiff sues Deputy Taylor in his official capacity and to the extent he seeks monetary damages his claims are barred.

*a. Official Capacity*

Suits against individuals in their official capacities are treated as suits against the governmental entities they represent – whether the city, county or state. *See, e.g., Ky. v. Graham*, 473 U.S. 159, 165-66, (1985); *Faulkner v. Monroe Cty. Sheriff's Dep't*, 523 F. App'x 696, 701 (11th Cir. 2013). "A county's liability under § 1983 may not be based on the doctrine of *respondeat superior*." *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). "[A] county is liable only when the county's 'official policy'" causes a constitutional violation." *Id*. (quoting *Monell*, 436 U.S. at 694). "Thus, [Plaintiff] must identify a municipal policy or custom that caused [his] injury." *Id*. (internal marks omitted). Plaintiff's complaint contains no reference to a policy, custom or practice. Plaintiff

thus has failed to state a claim upon which relief can be granted against Defendant Powell in his official capacity.

   b. *Individual Capacity*

To the extent Plaintiff is suing Defendant Powell in his individual capacity and seeks monetary damages, such claim also fails under the doctrine of qualified immunity, which shields government officials from individual capacity suits against them for acts that do not violate a clearly established statutory or constitutional right of which a reasonable person would have known given the circumstances and information possessed by the official at the time of the conduct. *Hope v. Pelzer*, 536 U.S. 730 (2002); *Conn v. Gabbert*, 526 U.S. 286 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)); *Powell v. Ga. Dep't of Human Res.*, 114 F.3d 1074 (11th Cir. 1998). Qualified immunity seeks to ensure that individuals can reasonably anticipate when their conduct may give rise to liability, and hence, liability attaches only if the contours of the right allegedly violated are sufficiently clear that a reasonable person would understand that what he is doing violates that right. *McElligott v. Foley*, 182 F.3d 1248, 1260 (11th Cir. 1999) (citing *United States v. Lanier*, 520 U.S. 259, 270 (1997)).

To benefit from qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)

(internal quotation marks omitted). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff." *Id.* at 1194. There is no dispute here that Defendant Powell was acting within the scope of his discretionary authority when he allegedly committed the acts of which Plaintiff complains. Thus, the burden is on Plaintiff to show (1) a constitutional right has been violated on the facts alleged; and (2) the right was "clearly established." *Saucier v. Katz*, 533 U.S. 194 (2001).

When a defendant, as here, "raises the defense of qualified immunity, the standard is not actual probable cause or actual reasonable suspicion[.]" *Marshall v. West*, 507 F. Supp. 2d 1285, 1295 (M.D. Ala. 2007). Rather, the standard is "arguable probable cause/reasonable suspicion." *Id.* (citing *Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir. 1997)); *see also Jackson v. Sauls*, 206 F.3d 1156, 1165–66 (11th Cir. 2000) (discussing arguable reasonable suspicion)). Therefore, "under the qualified immunity inquiry, the issue for determining whether Plaintiff has alleged a Fourth Amendment violation is whether an objectively reasonable officer in the same circumstances and possessing the same information as the defendant could have believed that probable cause or reasonable suspicion existed." *Marshall*, 507 F. Supp. 2d at 1295 (citing *Crosby v. Monroe County*, 394 F.3d 1328, 1332–33 (11th Cir. 2004) (finding that arguable probable cause exists "if, under all of the facts and circumstances, an officer reasonably could—not necessarily

would—have believed that probable cause was present"); *see also Jackson*, 206 F.3d at 1165–66.

In *Muehler v. Mena*, 544 U.S. 93 (2005), the Court opined that when executing a search warrant, police officers were authorized to detain the occupant of a house for several hours; nor any independent reasonable suspicion in order to question the occupant. Here, although no warrant was present, the specific issue concerns a police investigation into Plaintiff possessing specialized tools stolen from a construction site. Deputy Powell's specific action in detaining Plaintiff by placing handcuffs on him temporarily while two other law enforcement officers conducted searches in Plaintiff's truck and then at his storage unit. There was no precedent that would have put Deputy Powell on notice that his actions violated Plaintiff's clearly established rights. As such, Deputy Powell is entitled to qualified immunity.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Defendant Scott Powell respectfully requests this Honorable Court grant the instant motion and dismiss the claims against him.

Dated this 31st day of May, 2022.

>Respectfully submitted,
>
>*/s/ Michael P. Spellman*
>**MICHAEL P. SPELLMAN**
>Florida Bar No. 937975
>Email: mspellman@sniffenlaw.com
>
>**SNIFFEN & SPELLMAN, P.A.**
>123 North Monroe Street
>Tallahassee, Florida 32301
>Telephone (850) 205-1996
>Facsimile: (850) 205-3004
>*Attorney for Defendant*
>*Deputy Scott Powell*

## CERTIFICATE OF WORD COUNT

This document complies with word limits set forth in N.D. Fla. Local Rule 7.1(F), and contains 3,904 words, which includes the headings, footnotes, and quotations, but does not include the case style, signature block or Certificates of Word Count and Service.

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 31st day of May, 2022, a true and correct copy of the foregoing was electronically filed in the U.S. District Court, Northern District of Florida, Tallahassee Division using the CM/ECF system.

>*/s/ Michael P. Spellman*
>**MICHAEL P. SPELLMAN**