UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**MICHAEL GRASSO,**

     **Plaintiff,**

**vs.**                           **Case No.: 4:21-cv-310-WS/MFJ**

**ARD CONTRACTING,** *et al.*,

     **Defendants.**

_____/


## DEFENDANTS VARNER AND GRAY'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

Defendants **TYLER VARNER** (VARNER) and **NICHOLAS GRAY** (GRAY), sworn law enforcement officers with the Florida State University Police Department (FSUPD), by and through their undersigned counsel, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, hereby move this Honorable Court to dismiss **MICHAEL GRASSO's** (Plaintiff) Second Amended Complaint (ECF No. 9),  and in support thereof, state as follows:

## SUMMARY OF ARGUMENT

Plaintiff's Second Amended Complaint asserts that he is entitled to relief because he was subjected by VARNER and GRAY to False Arrest, Illegal Search and Seizure, and Intentional Infliction of Emotional Distress.  Plaintiff admits he was in knowing possession of thousands of dollars of recently stolen property

which he did not immediately return.  Defendants VARNER and GRAY, as state law enforcement officers, were tasked with investigating the theft (a discretionary governmental function).  In so doing, neither defendant violated a well-recognized legal right because Plaintiff's detention was reasonable under a <u>Terry</u> analysis and otherwise justified by probable cause for Plaintiff's arrest.  Both, therefore, are entitled to qualified immunity from suit.

Because Plaintiff was in knowing possession of stolen property, GRAY and VARNER had to determine if Plaintiff was the thief, an accomplice, or an innocent party.  In doing so, under both federal and Florida law, GRAY and VARNER were permitted to briefly detain Plaintiff to ensure their safety and determine Plaintiff's involvement.  Plaintiff refused to return the recently stolen property when detained (even after the police identified themselves and their purpose) or provide an explanation for its possession.  This was sufficient probable cause for   possession of stolen property, which VARNER warned could result in Plaintiff's arrest.  Plaintiff's brief detention, while not an arrest, was nevertheless fully justified, as were the search of his truck, storage space, and phone, because a detention was justified under <u>Terry</u> and probable cause existed for arrest.  Plaintiff, therefore, fails to state a claim for either False Arrest or Illegal Search and Seizure.

Plaintiff's claim of Intentional Infliction of Emotional Distress also fails because neither GRAY nor VARNER's actions were so outrageous or prolonged,

or the explanation of legal rights so misplaced, as to satisfy the stringent elements of the claim.

Finally, Plaintiff has failed to satisfy the pre-suit requirements under Section 768.28, Florida Statutes with regard to the waiver of Sovereign Immunity as to each state tort claim and his claims should be dismissed.

## <u>FACTUAL BACKGROUND</u>

On July 29, 2019, Plaintiff purchased a $10,000 surveying tool called a "Total Station" for $150 dollars from an unknown seller on an online marketplace called "Offerup.com."  Complaint at ¶¶ 1, 2.  Plaintiff immediately suspected that the unit was stolen and contacted the owner, co-Defendant ARD CONTRACTING (ARD), whose name was printed on the equipment.  <u>Id.</u>  Plaintiff spoke with both the owner of ARD and one of his employees, who both confirmed that the unit had been stolen.  <u>Id.</u> at ¶¶ 2, 3.  Plaintiff verified, at ARD's request, that other items stolen from ARD (Topcon Levels) were in the possession of an unknown seller.  <u>Id.</u> at ¶¶ 3, 4.  Plaintiff was told by ARD's employees that the Tallahassee Police Department (TPD) was conducting a theft investigation to apprehend the thief.  <u>Id.</u> at ¶¶ 3, 4, 5, 6.

On August 1, 2019, Plaintiff was advised by ARD employee James Beard that a TPD sting had failed to catch the thief.  <u>Id.</u> at ¶ 6.  The thief then contacted Plaintiff to tell him he was leaving town for Atlanta and couldn't meet Plaintiff to

sell the other stolen equipment.  Id.  Plaintiff was then contacted by ARD who requested Plaintiff return the stolen Total Station by the next morning.  Id. at ¶ 10. ARD's employee advised Plaintiff he would drive to St. Marks, Florida, to pick up the stolen property with $150 as compensation for Plaintiff's purchase of the Total Station, along with "something to say thank you" for the Plaintiff.  Id. at ¶ 11. Plaintiff set the meeting place at a car wash/self-storage facility where, "[u]nbeknownst to DEFENDANTS, PLAINTIFF had a storage unit where he was keeping the unit for safe keeping."  Id.

On the morning August 2, 2019, Plaintiff was met at the storage facility by law enforcement officers instead of the ARD employee.  Id.  During the encounter, Plaintiff claims he was placed in handcuffs by another co-Defendant, Wakulla County Sheriff's Deputy SCOTT POWELL (POWELL) suddenly and without explanation.  Id.  Plaintiff did not have the stolen Total Station in his immediate possession, nor did he offer to provide it to Defendants VARNER, GRAY or POWELL even after VARNER identified himself as a law enforcement officer. Id. at ¶ 12.  VARNER and GRAY searched Plaintiff's truck and phone and warned the Plaintiff he could be arrested (not that he was under arrest) for Possession of Stolen Property.  Id. at ¶¶ 13, 14, 15.  Plaintiff was also advised by VARNER and GRAY that Plaintiff's arrest could result in his incarceration for five days and his dog's placement in a shelter.  Id.  Only then did Plaintiff relent, give officers

access to his phone to explain his innocence, and reveal the location of ARD's stolen property (at which time the handcuffs were removed). Id. at ¶ 14. Plaintiff then unlocked the storage unit where the Total Station was stored and gave it to VARNER, GRAY and POWELL. Id.

Plaintiff states that Defendants VARNER, GRAY, and POWELL refused to return Plaintiff's telephone which forced him to drive to the Wakulla County Sheriff's Office and wait approximately 90 minutes for its return. Id. at ¶ 16. Plaintiff states that at no time did he consent to a search of his truck, phone, or storage unit and that POWELL warned his dog could be destroyed if Plaintiff was actually arrested and jailed for Possession of Stolen Property. Id. at ¶¶ 13, 14, 15, 16.

## MEMORANDUM OF LAW

### A. Legal Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the

defendant fair notice of what the ... claim is and the grounds upon which it rests.'"
Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (*quoting* Bell Atlantic
Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege
"enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at
570. "A claim has facial plausibility when the pleaded factual content allows the
court to draw the reasonable inference that the defendant is liable for the
misconduct alleged." Iqbal, 556 U.S. at 678 (*citing* Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief
requires more than labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal
quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that
"conclusory allegations, unwarranted deductions of facts or legal conclusions
masquerading as facts will not prevent dismissal") (internal citation and quotations
omitted). Indeed, "the tenet that a court must accept as true all of the allegations
contained in a complaint is inapplicable to legal conclusions[,]" which simply "are
not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680.

Thus, in ruling on a motion to dismiss, the Court must determine whether
the complaint contains "sufficient factual matter, accepted as true, to 'state a claim
to relief that is plausible on its face[.]' " Id. at 678 (*quoting* Twombly, 550 U.S. at
570).

6

B. **False Arrest.**

Count 3 of Plaintiff's Second Amended Complaint alleges that, on the morning of August 2, 2019, Plaintiff was subjected to false arrest by VARNER and GRAY when he was handcuffed, and his phone was seized for a period of 90 minutes.  Complaint, ¶¶ 11, 13, 14, 16, 29-35.  Plaintiff was not, however, arrested, but subject only to a brief investigatory detention to determine his identity, ensure the safety of the officers, maintain the status quo, and complete VARNER and GRAY's investigation.  Because such brief detentions are justified by the totality of the circumstances and permissible under both federal and Florida law, the Plaintiff was not falsely arrested.

The Supreme Court has long recognized that individuals can be detained by law enforcement and searched when there is less than probable cause for an arrest when the police officer has reasonable suspicion to believe that criminal activity may be afoot.  U.S. v. Fields, 178 Fed. Appx 890, 892 (11th Cir. 2006) (citing United States v. Arvizu, 534 U.S. 266 (2002)).   "Personal encounters between law enforcement officers and citizens are 'seizures' on occasions 'when the officer, by means of force of show of authority, has in some way restrained the liberty of a citizen." Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir. 1991) (citing Terry v. Ohio, 392 U.S. 1, 19 n. 16   (1968)).  The Supreme Court has, nevertheless, recognized the need to balance investigatory detentions by law enforcement

against Fourth Amendment rights.   Speaking to the delicate balancing act that

occurs in such instances, the Court stated:

> The Fourth Amendment does not require a policeman who
> lacks the precise level of information necessary for probable
> cause to arrest to simply shrug his shoulders and allow a crime
> to occur or criminal to escape. On the
> contrary, *Terry* recognizes that it may be the essence of good
> police work to adopt an intermediate response. A brief stop of
> a suspicious individual, in order to determine his identity or to
> maintain the status quo momentarily while obtaining more
> information, may be most reasonable in light of the facts
> known to the officer at the time.

Adams v. Williams, 407 U.S. 143, 145–46, (1972).   In evaluating whether the

encounter is a Terry stop or an actual arrest, the court should conduct a careful

evaluation of the facts surrounding the encounter and the nature and degree of the

intrusion balanced against the promotion of legitimate government interests.

Courson, 939 F.2d at 1490. (citing United Sates v. Roper, 702 F.2d 984, 985 (11th

Cir. 1983)).   There is, however, no "bright line" for the reasonableness of the

duration of an investigatory stop, "common sense and ordinary human experience

must govern over rigid criteria.'   Id. at 1491 (citing United States v. Sharpe, 470

U.S. 675, 685 (1985)).   Ultimately, the question is whether the police diligently

pursued an investigation to dispel their suspicions quickly while detaining the

individual.   Id.   "[T]he totality of the circumstances determines when an encounter

has become too intrusive to be classified as a seizure and has become an arrest,

requiring probable cause."   Id. at 1492, (citing Florida v. Royer, 460 U.S. 491,

8

499-500 (1983)).   The use of a particular method to restrain someone's freedom of movement (such as handcuffs) is not dispositive of an arrest since police can take certain steps to protect themselves and maintain the status quo.  Id.

Florida law also recognizes the legality of temporary detentions and has incorporated it by statute in state law.  Florida's "Stop and Frisk" law, Section 901.151(2), Florida Statutes (2019) provides:

> Whenever any law enforcement officer of this state encounters any person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county, the officer may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding the person's presence abroad which led the officer to believe that the person had committed, was committing, or was about to commit a criminal offense.

The facts of this case clearly suggest that Plaintiff had questionable involvement in this theft and that his brief detention was justified.   Plaintiff purchased a $10,000 piece of equipment belonging to ARD on July 31, 2019, for a fraction of the price ($150).  Complaint at ¶ 1.  Plaintiff immediately suspected it was stolen but took possession of it anyway.  Id. at ¶¶ 1, 2.  Plaintiff also knew from conversations with ARD that the equipment was very valuable and that it had been stolen two weeks prior.  Id. at ¶ 1, 2, 3.   Despite his claims, Plaintiff clearly expected to be both compensated and rewarded for his find, did not want to

surrender the property without some kind of payment, and made no efforts to return the stolen item until prompted to do so. Id. at ¶¶ 2, 11.  Plaintiff's involvement with the seller and the seller's sudden disappearance were, at the very least, suspicious.

Under the circumstances, it was reasonable for VARNER and GRAY to believe that Plaintiff may have been the actual thief or, at the very least, an accomplice attempting to facilitate the sale of stolen items.  Plaintiff also had the stolen unit secreted in a locked unit and initially refused to cooperate with any of the officers on August 2, 2019, even after they identified themselves as law enforcement and explained that they were merely seeking the return of ARD's stolen property (Plaintiff willfully withheld stolen property even after being warned he faced arrest). Id., ¶¶ 11, 12, 13.  Plaintiff's detention was reasonable based on the suspicion of criminal activity by Plaintiff and was quickly ended as soon as VARNER and GRAY verified Plaintiff's identity, concluded he was not armed, retrieved the stolen Total Station from Plaintiff, and verified he was not involved in its theft.  Plaintiff was then free to go but elected to go to the Sheriff's Office in his own truck, where he was able to leave at any time.  Id., ¶¶ 16. Under the totality of the circumstances, the detention was therefore both brief and justified, did not constitute a false arrest, and the Plaintiff's claim should be dismissed.

Even if there was insufficient evidence to demonstrate that Plaintiff's detention was legal under <u>Terry</u>, Plaintiff's claim of False Arrest also fails because there was actual probable cause to arrest him for possession of stolen property. A claim for false imprisonment lies when the imprisonment is **unlawful,** and the confinement is **without legal authority**.   Plaintiff must allege the unlawfulness of the detention, and then Defendant may raise and prove probable cause as an affirmative defense.  <u>Rivers v. Dillards Department Store, Inc.</u>, 698 So. 2d 1328, 1331 (Fla. 1st DCA 1997)(citations omitted).   "A warrantless arrest without probable cause violates the Constitution and provides a basis for a Section 1983 claim, but the existence of probable cause at the time of the arrest constitutes an absolute bar to a Section 1983 claim for false arrest."  <u>Frias v. Demings</u>, 823 F. Supp. 2d 1279, 1283 (M.D. Florida, Orlando Division, 2011)(citing Case v. Eslinger, 555 F.3d 1317, 1326-27 (11th Cir. 2009)).

As stated *supra*, Plaintiff was in knowing possession of recently stolen property worth $10,000 and suspected the property was stolen when he bought it. Plaintiff retained possession of that property for several days after he knew it was stolen.  Plaintiff refused to return the property or provide any evidence of how it came to be in his possession even after he was detained by law enforcement and warned that he could be arrested for not returning it.  Florida law dealing with

possession of stolen property, Section 812.022(2), Florida Statutes (2019) provides:

> Except as provided in subsection (5), proof of possession of property recently stolen, unless satisfactorily explained, gives rise to an inference that the person in possession of the property knew or should have known that the property had been stolen.

Possession of stolen property by the Plaintiff under the circumstances of this case, without valid explanation, constituted a felony Grand Theft pursuant to Section 812.014(c). While there may have been some question prior to August 2, 2019, it clearly occurred when Plaintiff was advised that he was in knowing possession of stolen property by VARNER and GRAY at the time of his detention and Plaintiff refused to return the property, despite the officers identifying themselves, their purpose, and his violation of the law. That Plaintiff was not arrested on August 2, 2019, was, as VARNER stated to, a matter of officer discretion and Plaintiff's luck, since Plaintiff was clearly in knowing possession of recently stolen property without satisfactory explanation. Complaint ¶¶ 13, 16. Plaintiff's claim for False Arrest should also be dismissed because VARNER and GRAY can demonstrate that they had probable cause to arrest the Plaintiff for possession of stolen property.

### C.  Illegal Search and Seizure

Plaintiff alleges in Count 2 of his Second Amended Complaint that he was the subject of an illegal search and seizure when he was handcuffed by POWELL without explanation and his vehicle, phone, and storage unit were searched by VARNER and GRAY without his consent.  Id. at ¶¶ 12, 13, 15, 23-28.  As explained *supra*, Plaintiff was subject to a brief investigatory detention and placed in handcuffs pursuant to the parameters of Terry.  The detention of the Plaintiff last only long enough to determine the Plaintiff's identity, ensure officer safety, locate ARD's stolen property, and determine Plaintiff's involvement in the underlying theft.  As soon as VARNER and GRAY's suspicions of Plaintiff's involvement in the underlying crime were dispelled and Plaintiff agreed to return the stolen property, Plaintiff's detention ended.  Id. at. ¶¶ 14.

Regardless of the legality of Plaintiff's detention, VARNER and GRAY had probable cause to make an arrest for Plaintiff's knowing possession of stolen property as argued *supra.*  The existence of probable cause in this instance justifies the search.  See Florida v. King, 405 So.2d 770, 773 (Fla. 5th DCA, 1981)("So long as a lawful arrest has been made or, as here, probable cause to arrest existed at the time of the search, the arrestee and the area within his immediate control may be searched.").  The search of Plaintiff's vehicle, storage

unit, and telephone, were, therefore justified by probable cause for Plaintiff's arrest and Plaintiff's claim should be dismissed.

### D.  Intentional Infliction of Emotional Distress

Count 1 of Plaintiff's Second Amended Complaint claims that Plaintiff was caused Intentional Infliction of Emotional Distress by intentionally preventing Plaintiff from returning the equipment to the police or ARD and by threatening to have Plaintiff's service dog sheltered and possibly euthanized.  Id. at. ¶¶ 5-22. Plaintiff's claim here fails for several reasons, the first being that he has failed to allege any facts that actually state the claim and has presented mere conclusory statements in their place that fails to meet the extremely high burden set for this type of civil claim.

In bringing a cause of action for Intentional Infliction of Emotional Distress, Plaintiff must demonstrate:

> (1) The wrongdoer's conduct was intentional or reckless, that is, he intended his behavior and he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, that is, to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe.

Frias, 823 F.Supp. 2d at 1288 (citing  LeGrande v. Emmanuel, 889 So.2d 991, 994 (Fla. 3d DCA 2004).   When determining if the alleged conduct is truly

"outrageous," the courts concluded that the determination is one of law and not of fact which is an objective question over which the victim does not have control. Id. (citations omitted).  Nevertheless, the standard is extremely high and has severe emotional is ultimately, "[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it."  Id. at 1289 (citing the Restatement (Second) of Torts §46).

Plaintiff's claim here fails first because he has not demonstrated that the in conducting an investigation and stating a legal fact (that in an arrest for possession of stolen property plaintiff's dog could be impounded and destroyed), that VARNER or GRAY's comments were so outrageous as to qualify as to be "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Id. at 1288 (citing Metro. Life Ins. Co. v. McCarson,  467 So.2d 277, 278–279 (Fla.1985) (quoting Restatement (Second) of Torts § 46 (1965)).

In a case involving the seizure of several animals that where the plaintiff claimed severe emotional distress due to the seizure of dogs and the actual anxiety it caused, the U.S. District Court for the Middle District of Florida held that governmental action threatening to possibly euthanize multiple dogs following the seizure did not constitute severe emotional distress.  Williams v. Flagler Humane

Society, Inc.  2013 WL 12358253 at *7 (Middle District of Florida March 22, 2013).  There, the court stated:

> Here, the fact that Williams' Dogs were either put down, sold or adopted when Williams did not want them to be is undoubtedly unfortunate. However, the allegations that FBHS took custody of the animals from the DBPD and either put them to sleep, gave them away, or sold them when Williams refused to pay the $15,000 FBHS claimed was required, are insufficient to satisfy the high standard of outrageous conduct.

Id. at 8.  As argued supra, the standard is extremely high and was not even satisfied where a plaintiff was subjected to ongoing, open racial discrimination or where a plaintiff was threatened with a gun.  See Williams v. Worldwide Flight SVCS., Inc., 877 So.2d 869 (Fla 3rd DCA 2004)(where the court did not find outrageous behavior despite Plaintiff being subject to constant harassment and racial insults) and Foreman v. City of Port St. Lucie, 294 Fed.Appx. 554 (11th Cir.2008) (where a police officer pointing an unloaded BB gun at a person and pulling the trigger was not sufficiently outrageous).   Additionally, if the Defendant is merely stating a legal right in a permissible way (animal could be impounded as a consequence of a lawful arrest), then no cause of action can attach.  "We have previously held that the tort of intentional infliction of emotional distress is not created by a person who does no more than pursue his legal rights in a permissible way, even if he knows his conduct will cause emotional distress."  State Farm Mut. Ins. Co. v. Novotny, 657 So.2d 1210, 1212 (Fla. 5th DCA 1995).

Here, Plaintiff's facts, that he was subject to a brief detention after being identified as a possible suspect in a theft where his dog with threatened with possible impoundment if he was subsequently arrested, fails to come anywhere near the extremely high standard set to support a claim of this type.  Complaint at ¶¶ 5-22.  Police investigations are confidential in Florida and not subject to disclosure under Public Records laws while they are active, so officers were under no obligation to share information with Plaintiff.  Furthermore, Defendant VARNER simply advised Plaintiff of the possible legal ramifications of his continued possession of ARD's stolen property, an action that does not give rise to a cause of action under Florida law.  Id. at ¶ 15.

Finally, Count 1 of Plaintiff's Second Amend fails to state what actual harm he suffered as a result of VARNER and GRAY's investigation or comments.  To prove a cause of action here, Plaintiff must claim severe emotional distress, for which it is entirely silent beyond a mere conclusory statement that VARNER and GRAY's actions caused him such distress. Id. at  ¶ 18.  Plaintiff has not shown in his Second Amended Complaint that Defendant VARNER or GRAY committed the tort of Intentional Infliction of Emotional Distress, and the claim should be dismissed as he has failed to demonstrate a cause of action.

### E.  **Qualified Immunity**

Qualified immunity is "an entitlement not to stand trial under certain circumstances. Such entitlement is an immunity from suit rather than a mere defense to liability," which "is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 512 (1985). "Consequently, the issue of qualified immunity should be resolved at an early stage of the proceedings in the trial court. Often the issue is presented to the court before the parties are allowed to conduct discovery on the merits of the claim asserted in the complaint." Junior v. Reed, 693 So.2d 586, 590 (Fla. 1st DCA 1997).

"The Supreme Court has developed an objective-reasonableness test for evaluating actions of a government official claiming qualified immunity:  the official's action must be evaluated against 'clearly established law,' consisting of statutory or constitutional right that a reasonable person should have known." Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir. 1991)(citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Rich v. Dollar, 841 F.2d 1558, 1563 (11th Cir. 1988).  "This objective-reasonableness test provides qualified immunity protection to 'all but the plainly incompetent or those who knowingly violate the law." Id. citing Malley v. Briggs, 475 U.S. 335, 341 (1986); Hutton v. Strickland, 919 F.2d 1531, 1537  (11th Cir. 1990).

When evaluating qualified immunity against Plaintiff's claims, Defendants VARNER and GRAY must first demonstrate that they were acting "within the scope" of their discretionary authority when the allegations occurred.  Courson, 939 F.2d at 1487 (citations omitted).  Florida law has recognized for years that conducting a criminal investigation is a discretionary function of law enforcement. *See generally* Trianon Park Condominium Association, Inc., v. City of Hialeah, 468 So. 2d  912 (Fla. 1985); *and also*, Carpenter v. City of St. Petersburg and St. Petersburg Police Department, 547 So. 2d 339 (Fla. 2nd DCA 1989)(allegedly negligent arrest was discretionary function involving enforcement of loss and protection of public safety and, thus, sovereign immunity applied and prevented holding city liable).  In this case, Defendants VARNER and GRAY, sworn law enforcement officers with FSUPD, were engaged in a burglary investigation where Plaintiff was in knowing possession of stolen property from the victim, ARD. Complaint, ¶¶ 1-16.   Such an investigation is a discretionary function within the scope of their authority under the second category of government functions recognized in Trianon and thus, satisfies the first prong for qualified immunity.

The second prong of the qualified immunity analysis requires an evaluation of Plaintiff's demonstration of lack of good faith by Defendants VARNER and GRAY, and as such, proof that the defendants "violated clearly established constitutional law." Courson, 939 F.2d at 1487. (citations omitted).   To evaluate

this, the court must decide:  (a). if the applicable law was clearly established when the defendant's actions occurred; and (b). if there is a genuine issue of material fact such that the defendant's conduct was a violation of clearly established law.  Id. 1487, 1488. (citations omitted).

Defendants VARNER and GRAY, as stated supra, were engaged in a criminal investigation of a theft where Plaintiff was in knowing possession of stolen property.  Pursuant to Terry and Florida law, VARNER and GRAY had a reasonable basis not only to believe that they could detain Plaintiff based on the totality of the circumstances, but also sufficient probable cause to effect an arrest and conduct a search of person and possessions and would be entitled to qualified immunity under both Florida and federal law and the complaint should be dismissed in its entirety with prejudice.

### F.  Plaintiff's Failure to Satisfy Waiver of Sovereign Immunity Pursuant to Section 768.28

The incident giving rise to this complaint occurred on August 2, 2019. Plaintiff filed suit in this case on August 18, 2021.  Nevertheless, Plaintiff never provided a Notice of Claim to the Florida Department of Financial Services, Division of Risk Management (DFS) or Florida State University Police Department, the employer of  the defendants named in this claim.

Section 768.28(6)(a), Fla. Stat. (2019) states "[a]n action may not be instituted against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality, county, or the Florida Space Authority, presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing;" See id. Section 768.28(6)(b), Fla. Stat. (2020) further states that, "[f]or purposes of this section, the requirements of notice to the agency and denial of the claim pursuant to paragraph (a) are conditions precedent to maintaining an action but shall not be deemed to be elements of the cause of action and shall not affect the date on which the cause of action accrues." See id.

Because it is an aspect of the state's waiver of sovereign immunity, the notice provisions of Section 768.28(6) must be strictly construed, and full compliance required to maintain a tort action against the state and its agencies. "Section 768.28(6), Florida Statutes, is a part of a statutory waiver of sovereign immunity.  As a result, strict compliance is required" Ledner v. Orlando Utilities Com'n, 981 So.2d 521, 522 (2008) (citing Levine v. Dade County Sch. Bd., 442 So.2d 210, 212 (Fla. 1993)).

Since Plaintiff has failed to notice his claim to DFS and FSUPD, Plaintiff has failed to comply with the notice provisions of the limited waiver of sovereign

immunity found at Section 768.28(6)(a) – (c), Fla. Stat. (2020). Specifically, Plaintiff has failed to provide a Notice of Claim to both DFS and defendants' employer FSUPD and has filed suit prior to expiration of six months of a Notice of Claim having been filed with both agencies. The action should therefore be dismissed.

WHEREFORE, for the foregoing reasons provided, Defendants VARNER and GRAY respectively request this Honorable Court grant this motion and dismiss Plaintiff's Second Amended Complaint with prejudice.

## CERTIFICATE OF WORD LIMITATION

In accordance with N.D. Fla. Loc. R. 7.1(F), the number of words in the memorandum, which excludes the case style, signature block, and certificates (conference, word limitation, and service) is 5.001.

Respectfully submitted,

ASHLEY B. MOODY
ATTORNEY GENERAL

*/s/ Christopher Torres*
Christopher Torres
Assistant Attorney General
Florida Bar No.: 479209

Office of the Attorney General
PL-01, The Capitol
Tallahassee, Florida 32399-1050

22

(850) 414-3300
Christopher.Torres@myfloridalegal.com
joann.mrazek@myfloridalegal.com
steven.holcomb@myfloridalegal.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed through the Court's CM/ECF system which will provide electronic service to all counsel of record and via U.S. Mail to Plaintiff Michael Grasso, 2017 Gardenbrook Lane, Tallahassee, FL  32301 this 30th day of June 2022.


*/s/ Christopher Torres*
Christopher Torres