## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

MICHAEL GRASSO,

     Plaintiff,

v.                                Case No. 4:21-cv-310-WS-MJF

DET. TYLER VARNER, *et al.*,

     Defendants.

_____/

## FIRST REPORT AND RECOMMENDATION

*Pro se* plaintiff Michael Grasso ("Grasso") initiated this civil action against three law enforcement officers for alleged violations of his Fourth-Amendment rights. Doc. 9 at 12.[1] Grasso also asserts state law claims for intentional infliction of emotional distress ("IIED") and false imprisonment. *Id.* at 11, 13. Defendant Deputy Scott Powell ("Powell") of the Wakulla County Sheriff's Office ("WCSO") filed a motion to dismiss Grasso's second amended complaint for failure to state a claim upon which relief can be granted. Doc. 26. Grasso has responded in opposition, Doc. 39. For the reasons set forth below, the undersigned respectfully recommends that the District Court grant in part and deny in part Powell's motion to dismiss.

---

[1] Grasso also sued Ard Contracting Inc ("Ard") for IIED. On July 8, 2022, the District Court granted Ard's motion to dismiss and dismissed Grasso's IIED claim against Ard. Doc. 46.

## I. BACKGROUND

Grasso is a person with a disability who utilizes a service dog for "psychiatric disabilities." Doc. 9 ¶ 22. According to Grasso's second amended complaint, on July 29, 2019, Grasso purchased a piece of survey construction equipment ("the Unit") from an online marketplace known as "Offerup.com." *Id.* ¶ 1. The Unit had been stolen, but Grasso alleges that he did not know this when he purchased the Unit.

Once Grasso examined the calibration sticker—which he had noticed prior to purchasing the Unit—Grasso saw that Ard had owned the Unit. *Id.* Consequently, Grasso contacted Ard and confirmed that Ard still owned the Unit. *Id.* Ard's employee, Mr. Ard, directed Grasso to contact another Ard employee, "Dale," for more information regarding the Unit.[2] *Id.*

Grasso telephoned Dale and informed Dale that he had purchased the Unit. Doc. 9 ¶ 2. Dale told Grasso that the Unit had been stolen and that Ard had reported the theft to the Tallahassee Police Department ("TPD"). *Id.* At Dale's behest, Grasso contacted the online seller of the Unit to inquire whether the seller possessed additional pieces of Ard's property. *Id.* ¶¶ 2–3.

On or about July 31, 2019, Grasso contacted TPD about its investigation of the theft, but TPD denied the existence of any such investigation. *Id.* ¶ 5. Grasso

---

[2] Grasso did not provide Mr. Ard's Christian name, and he did not provide the surname for Dale.

notified Dale that, according to TPD, TPD was not investigating the Unit's theft. *Id.* On August 1, 2019, Dale told Grasso to reach out to another Ard employee, James Beard, who informed Grasso that TPD had "tried to sting the seller [of the stolen Unit] the previous night." Doc. 9 ¶ 6.

On August 1, 2019, Beard informed Grasso that Ard needed to retrieve the Unit, and Beard promised Grasso a reward for the return of the Unit. *Id.* ¶ 10. The men agreed to meet at a car wash/self-storage location in the St. Marks area of Tallahassee where Grasso had stored the Unit. *Id.* ¶ 11.

On August 2, 2019, Grasso traveled to the car wash/self-storage location. *Id.* Defendants Tyler Varner ("Varner") and Nicholas Gray ("Gray") of the Florida State University police and Powell made contact with Grasso at this location. *Id.*

Powell "immediately" handcuffed Grasso "without explanation." *Id.* Grasso, however, does not specify the duration of the period he was handcuffed. In any event, while Grasso was handcuffed, without first obtaining a search or seizure warrant, Varner and Gray "ransack[ed]" Grasso's vehicle, confiscated Grasso's cellular telephone, and started reading text messages found on Grasso's telephone. Doc. 9 ¶¶ 11, 13.

Grasso objected to these warrantless searches, to which Powell responded that Grasso would be incarcerated for five days. *Id.* ¶ 13. Powell also threatened to impound Grasso's service dog. Powell elaborated that this could result in the

euthanization of Grasso's dog. *Id.* Because Grasso feared that Defendants would delete exculpatory text messages from his cellular telephone, Grasso acquiesced to Defendants searching his cellular telephone and showed Defendants where they could locate messages between the person who sold Grasso the Unit and Grasso. *Id.* ¶ 14.

Powell then removed the handcuffs. *Id.* Grasso unlocked his storage locker, retrieved the Unit, and surrendered the Unit to Defendants. *Id.* Despite the fact that Grasso already had surrendered the Unit and instructed Varner to "stay out of the storage unit," Varner searched Grasso's storage unit without first having obtained a search warrant. Doc. 9 ¶ 16

Although Grasso does not specifically allege that he requested that Defendants return his cellular telephone, Grasso alleges that "Varner, Nick, and Powell refused to return [the] phone and stated that if [Grasso] wanted it back he would have to go to the WCSO station to retrieve it." *Id.* Defendants delivered the phone to the WCSO, and unnamed detectives and Powell searched the phone for approximately ninety minutes without first obtaining a search warrant. *Id.* ¶¶ 16, 26.

Based on these allegations, Grasso asserts three claims against Powell:

- a violation of the Fourth Amendment based on Powell's detention of Grasso and Powell's role in the seizure and search of Grasso's cellular telephone[3];

---

[3] Grasso asserts Fourth-Amendment claims against Varner and Gray for the search of Grasso's vehicle and the search of his storage unit, but Grasso has not asserted these claims against Powell.

- IIED under Florida law; and

- false imprisonment under Florida law based on (a) Powell's detention of Grasso while Varner and Nick searched Grasso's car; and (b) the time Grasso spent at the WCSO waiting to retrieve his cellular telephone.

*Id.* at 11–13. Grasso does not specify whether he is asserting his claims against Powell in his official or individual capacity. The undersigned, therefore, addresses Grasso's claims as though he were asserting both individual- and official-capacity claims. For relief, Grasso seeks general, special, and punitive damages. *Id.* at 4.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion-to-dismiss stage, the court accepts all well-pleaded factual allegations of the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022) (citation omitted). For a claim to survive dismissal, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged," rather than the mere possibility that the defendant acted unlawfully. *Id.* (*citing Twombly*, 550 U.S. at 556). That is, the complaint's factual allegations must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678 (reiterating that Federal Rule of Civil Procedure 8 demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Doe v. Samford Univ.*, 29 F.4th 675, 685 (11th Cir. 2022) (citation and internal quotation marks omitted). Courts "hold the allegations of a *pro se* complaint to less stringent standards than formal pleadings drafted by lawyers." *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014) (*citing Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

## III. DISCUSSION

### A. <u>Grasso Failed to State a Section 1983 Official-Capacity Claim</u>

Powell argues that to the extent Grasso intended to allege an official-capacity claim, Grasso has failed to allege that Wakulla County had a policy, custom, or practice of violating the Fourth Amendment. Doc. 26 at 14.

"[O]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S 658, 690 n.55 (1978)). In other words, in a section 1983 action "a claim against a

defendant in his official capacity is the same as a claim against his employer." *Christman v. Saint Lucie Cnty.*, 509 F. App'x 878, 879 (11th Cir. 2013) (citing *McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 n.2 (1997)). Thus, when a "section 1983 plaintiff sues government employees (such as police officers) in their official capacities, the suit is in actuality against the governmental entity that the individuals represent." *Farred v. Hicks*, 915 F.2d 1530, 1532 (11th Cir. 1990). In other words, a claim against Powell in his official capacity is a claim against Wakulla County.

To state a section 1983 official-capacity claim against a municipality—such as Wakulla County—a plaintiff must allege that "(1) his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). A policy is "a decision that is officially adopted by the municipality or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). Because a municipality will rarely have an officially-adopted policy that permits a particular constitutional violation, a plaintiff may alternatively allege that the constitutional violation was caused by a custom. *Id.* A custom is a "practice that is so settled and permanent that it takes on the force of law" or is a "persistent and wide-spread practice." *Id.*

Grasso's second amended complaint is devoid of any allegations that the alleged constitutional violations were caused by a custom, policy, or practice attributable to Wakulla County or the WCSO. The undersigned afforded Grasso an opportunity to supplement his complaint. Doc. 7. Grasso, nevertheless, has failed to allege the existence of a custom, policy, or practice that violates the Fourth Amendment. Because Grasso has not alleged sufficient facts to support an official-capacity section 1983 claim against Powell, the District Court should dismiss this claim with prejudice.

**B.**    **Grasso Failed to State a Claim as to Powell's Detention of Grasso**

Grasso alleges in his second amended complaint that Powell violated the Fourth Amendment by briefly detaining and handcuffing Grasso. Doc. 9 ¶¶ 24, 27. Powell argues that he is entitled to qualified immunity on Grasso's individual-capacity Fourth-Amendment claims. Doc. 26 at 4, 15–17.[4]

"Under the qualified immunity doctrine, government officials performing discretionary functions are immune not just from liability, but from suit, unless the conduct which is the basis for suit violates clearly established federal statutory or

---

[4] Powell argues generally that he is entitled to qualified immunity, but he does not address Grasso's claim that Powell violated the Fourth Amendment for his participation in the search of Grasso's cellular telephone. Doc. 26 at 15–17. It is unclear whether Powell intended to move to dismiss this claim. In any event, Powell does not develop any argument on this point. Undeveloped arguments are forfeited. The undersigned, therefore, will recommend that the District Court deny Powell's motion to dismiss to the extent he moved to dismiss this claim.

constitutional rights of which a reasonable person would have known." *Sanders v. Howze*, 177 F.3d 1245, 1249 (11th Cir. 1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To be entitled to qualified immunity, the defendant must first establish that he was acting within the scope of his discretionary authority." *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013)). Once that is shown, "the burden shifts to the plaintiff to establish that qualified immunity is not appropriate." *Id.*

In resolving questions of qualified immunity, courts engage in a two-pronged inquiry. *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1319, 1325 (11th Cir. 2016) (resolving question of qualified immunity at motion-to-dismiss stage). At the motion-to-dismiss stage, the first prong applies the *Twombly-Iqbal* plausibility standard. The court must ask whether the plaintiff's complaint contains sufficient factual matter, accepted as true, to state a plausible violation of a constitutional right. *See id.* The second prong asks whether that right was clearly established at the time of the defendant's conduct. *Id.* at 1325.

Consistent with the Fourth Amendment, "an officer may . . . conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Jackson v. Sauls*, 206 F.3d 1156, 1165 (11th Cir. 2000); *see Terry v. Ohio*, 392 U.S. 1, 30 (1968). A "reasonable, articulable suspicion" is less than probable cause; it requires only "a minimal level of objective justification."

*Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *see Kansas v. Glover*, 589 U.S. ___,

140 S. Ct. 1183, 1187 (2020) (reasonable suspicion requires "considerably less than

proof of wrongdoing by a preponderance of the evidence") (quoting *Navarette v.

California*, 572 U.S. 393, 397 (2014)).

Here, according to Grasso's allegations, Powell was investigating the theft of

Ard's property. Florida law prohibits theft of property and the possession of stolen

property when the possessor knows that it was stolen.

> (1) A person commits theft if he or she knowingly obtains . . . the
> property of another with intent to, either temporarily or
> permanently:
>
>> (a)   Deprive the other person of a right to the property or a
>> benefit from the property [or]
>
>> (b)   Appropriate the property to his or her own use or to the use
>> of any person not entitled to the use of the property.

Fla. Stat. § 812.014. Furthermore, "proof of possession of property recently stolen,

unless satisfactorily explained, gives rise to the inference that the person in

possession of the property knew or should have known that the property had been

stolen." Fla. Stat. § 812.022(2).

According to the allegations in Grasso's second amended complaint:

- On July 29, 2019, Grasso purchased the Unit—after seeing an advertisement
  posted on the internet—and thereafter possessed the Unit, which was a piece
  of stolen property;

- On July 29, 2019, upon inspecting the Unit, Grasso suspected that it was stolen property;

- Grasso "immediately"—*i.e.*, on July 29, 2019—informed Ard personnel that he (Grasso) was in possession of the Unit;

- Ard personnel informed Grasso that the Unit cost $10,000, but Grasso claimed that he paid only $150 for the Unit;[5]

- From July 29, 2019 through August 2, 2019, Grasso knew that he possessed stolen property because Ard personnel informed him of that[6];

- Despite knowing that he possessed stolen property, Grassso did not return the property to Ard or offer to return it to Ard and Grasso also did not take the Unit to the police;

- On August 1, 2019, an employee of Ard arranged to meet Grasso on an unspecified date at the car wash/self-storage location to retrieve the Unit after offering Grasso a reward in exchange for Grasso surrendering the Unit;

- On August 1, 2019, Grasso and the Ard employee agreed upon a time and location to meet; and

- On August 2, 2019, Grasso appeared at the pre-arranged location to collect the reward and surrender the Unit.[7]

---

[5] A reasonable law enforcement officer would be skeptical of Grasso's claim that he purchased for only $150 an item valued at $10,000.

[6] Although Grasso alleges that he made contact with the lawful owner of the Unit on July 29, 2019, he does not indicate that he offered to return the Unit to Ard until an Ard employee notified Grasso that Ard needed to retrieve the Unit and that he would provide Grasso a reward. *Id.* ¶ 10.

[7] In his second amended complaint, Grasso never specifies the date he encountered Powell, but based on the timeline Grasso alleges in his second amended complaint, it appears that the encounter occurred on August 2, 2019.

Under these circumstances, Powell certainly had reasonable suspicion that Grasso was involved in criminal activity sufficient to conduct an investigatory detention.[8] *See, e.g.*, *Archer v. City of Winter Haven*, No. 8:16-CV-3067-T-36AAS, 2018 WL 8806892, at *5 (M.D. Fla. Sept. 26, 2018); *Anderson v. Wal-Mart Stores, Inc.*, No. 12-61047-CIV, 2013 WL 773473, at *7 (S.D. Fla. Feb. 28, 2013); *Jackson v. Capraun*, 534 F. App'x 854, 856 (11th Cir. 2013). Indeed, based on the allegations in Grasso's second amended complaint, Powell had probable cause to arrest Grasso.[9] As Grasso concedes in his second amended complaint, Grasso possessed stolen

---

[8] For purposes of qualified immunity, a defendant does not need to establish that he had reasonable suspicion. *Whittier v. Kobayashi*, 581 F.3d 1304, 1308 (11th Cir. 2009); *Jackson*, 206 F.3d at 1166. Instead, the officer must demonstrate only the existence of "arguable" reasonable suspicion. *Whittier*, 581 F.3d at 1308; *Jackson*, 206 F.3d at 1166.

[9] Probable cause exists when the facts, considering the totality of the circumstances and viewed from the perspective of a reasonable officer, establish "a probability or substantial chance of criminal activity." *District of Columbia v. Wesby*, 583 U.S. ___, 138 S. Ct. 577, 586 (2018) (internal quotation marks omitted). Probable cause is "not a high bar." *United States v. Delgado*, 981 F.3d 889, 897 (11th Cir. 2020) (quoting *Wesby*, 138 S. Ct. at 586). "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972).

The fact that Grasso informed Powell that he was not the thief who stole the Unit does not immediately negate probable cause. "[P]robable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts . . . ." *Id*. at 588. Upon an initial encounter with a suspect, a "police officer need not resolve conflicting evidence in a manner favorable to the suspect." *Washington v. Howard*, 25 F.4th 891, 902 (11th Cir. 2022).

property after learning that it was stolen. That and the other suspicious circumstances mentioned above created probable cause.

Furthermore, although Grasso does not specify the duration of Powell's detention of Grasso, Grasso alleges that once Grasso agreed to give the Unit to Powell and the other officers, Powell released Grasso. Doc. 9 ¶ 14. Thus, Grasso has not alleged facts which indicate that Powell's detention extended to an unreasonable duration. Because it is apparent from Grasso's second amended complaint that Powell's detention was based on probable cause and did not extend for an unreasonable duration, Powell is entitled to qualified immunity on Grasso's Fourth-Amendment claim regarding the investigatory detention.

## C.     <u>Grasso's Individual-Capacity Claims Under Florida Law</u>

### 1.     *Individual-Capacity IIED Claim*

Powell next argues that Grasso's individual-capacity IIED claim must be dismissed because Grasso has failed to state sufficient facts to state a cause of action against Powell. Doc. 26 at 4, 11–12.

Under Florida law, a person "who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress[.]" *E. Airlines, Inc. v. King*, 557 So.2d 574, 575–76 (Fla. 1990) (citations omitted). To state an IIED claim, a plaintiff must allege four essential elements:

(1) the defendant deliberately or recklessly inflicted mental suffering on the plaintiff;

(2) the defendant's conduct was outrageous;

(3) the defendant's conduct caused the plaintiff's emotional distress; and

(4) the plaintiff's emotional distress was severe.

*Moore v. Pederson*, 806 F.3d 1036, 1053 (11th Cir. 2015) (citation omitted); *Tillman v. Orange Cnty.*, 519 F. App'x 632, 636 (11th Cir. 2013) (per curiam) (citation omitted); *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278 (Fla. 1985).

Here, Grasso has failed to allege two essential elements of an IIED claim.

### (a).   <u>Failure to Allege Extreme and Outrageous Conduct</u>

As to the second element, a plaintiff must state facts which show that the defendant's actions were "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Metro. Life Ins. Co.*, 467 So. 2d at 278–79 (quoting Restatement (Second) of Torts § 46 (1965)); *see also Lopez v. Target Corp.*, 676 F.3d 1230, 1236 (11th Cir. 2012). Florida law imposes on plaintiffs a "particularly high" standard with respect to the type of actions that constitute "outrageous conduct." *Pierre v. City of Miramar, Fla., Inc.*, 537 F. App'x 821, 827 (11th Cir. 2013) (citation omitted); *Foreman v. City of Port St. Lucie*, 294 F. App'x 554, 557 (11th Cir. 2008).

In that regard, liability for an IIED claim "does not extend to mere insults, indignities, threats, or false accusations." *See Lopez*, 676 F.3d at 1236 (citation and internal quotation marks omitted); *see also Koutsourradis v. Delta Air Lines, Inc.*, 427 F.3d 1339, 1344–45 (11th Cir. 2005) (per curiam) (noting that "mere insults and indignities" do not support an IIED claim under Florida law) (citations omitted). Mere deception also does not amount to extreme outrageous conduct required for an IIED claim. *Gonzalez-Jimenez de Ruiz v. United States*, 231 F. Supp. 2d 1187, 1159 (M.D. Fla. 2002). Further, the fact that the conduct at issue was tortious, criminal, intended to inflict emotional distress, or characterized by malice is insufficient in itself to constitute "outrageous" conduct. *E. Airlines, Inc.*, 557 So. 2d at 576; *Metro. Life Ins. Co.*, 467 So. 2d at 279. Although there are exceptions, the "outrageous" conduct necessary to sustain a claim typically requires "offensive physical contact." *McGinty v. Tracphone Wireless, Inc.*, 5 F. Supp. 3d 1337, 1341 (M.D. Fla. 2014).

When evaluating whether alleged conduct is sufficiently outrageous, "the court must make an objective determination, and the subjective response of the person suffering emotional distress does not control." *Lincoln v. Fla. Gas Transmission Co.*, 608 F. App'x 721, 722 (11th Cir. 2015). Whether conduct is sufficiently "outrageous" to state an IIED claim is a question of law for the court to decide. *Id.*; *Vance v. S. Bell Tel. & Tel. Co.*, 983 F.2d 1573, 1575 n.7 (11th Cir. 1993).

Here, Grasso's IIED claim is based on his allegations that

> [Powell] intended to cause Plaintiff's emotional distress or acted with reckless disregard of the probability that Plaintiff would suffer emotional distress, knowing that [Powell] w[as] intentionally plotting against Plaintiff and intentionally preventing Plaintiff from taking the equipment to the police or returning it directly to . . . Ard. . . . Once . . . Powell became aware that Plaintiff's service dog was for psychiatric disabilities, [Powell] continually, with malice, threatened Plaintiff with arrest and the sheltering and possible euthanizing of Plaintiff's service dog with intent of causing severe emotional distress to Plaintiff.

Doc. 9 ¶¶ 21–22.

Taking Grasso's allegations as true, Powell knew that Grasso was a person with a disability and that he used a service dog as support for his disability. Despite that knowledge, Powell handcuffed Grasso, threatened to jail Grasso for five days, threatened to impound Grasso's service dog, and mentioned that Grasso's dog could be killed. *Id.* ¶¶ 18–22.

Grasso's allegations do not meet the high pleading standard needed to state a IIED claim. Mere threats are insufficient to support an IIED claim. *See Lopez*, 676 F.3d at 1236. Thus, Powell's threats, without more, cannot be said to be so outrageous as to go beyond all possible bounds of decency, to be regarded as atrocious, or to be utterly intolerable in a civilized community.

Similarly, the fact that Powell handcuffed Grasso and detained him—for an unspecified period—also is not sufficiently offensive to constitute IIED. *Williams v. Allen,* No. 6:17-cv-242-ORl-31DCI, 2017 WL 1653744, at *6 (M.D. Fla. May 2,

2017); *Pierce v. Clayton Cnty.*, No. 1:16-cv-779-ODE, 2016 WL 10537013, at *6 (N.D. Ga. Oct. 11, 2016); *Frias v. Demings*, 823 F. Supp. 2d 1279, 1289 (M.D. Fla. 2011); *see also Rubio v. Lopez*, 445 F. App'x 170, 175 (11th Cir. 2011) (allegations that a deputy sheriff hobble-tied arrestee on black asphalt pavement in the sun, resulting in second-degree burns to face and chest, was insufficient to state a claim of IIED).

Because Grasso failed to state a claim of IIED upon which relief can be granted, the District Court should grant Powell's motion to dismiss this claim.

### (b).   Failure to Allege Severe Emotional Distress

There is a second, independent reason for the District Court to dismiss Grasso's IIED claim: Grasso failed to allege that he suffered serve emotional distress.

A plaintiff attempting to allege the "severe emotional distress" element of an IIED claim must allege that he suffered distress so severe that no reasonable man could be expected to endure it. *Casado v. Miami-Dade Cnty.*, 340 F. Supp. 3d 1320, 1332 (S.D. Fla. 2018). In other words, the distress must be "of such a substantial quality or enduring quality, that no reasonable person in a civilized society should be expected to endure it." *Kraeer Funeral Homes, Inc. v. Noble*, 521 So. 2d 324, 325 (Fla. 4th DCA 1988) (per curiam); *Kim v. Jung Hyun Chang*, 249 So. 3d 1300, 1305–06 (Fla. 2d DCA 2018).

Grasso's bare assertion that Powell caused him severe emotional distress is insufficient to allege that the distress inflicted was so severe that no reasonable person could endure it. Grasso's failure to allege this second essential element of his IIED claim also warrants dismissal of the claim against Powell.

### 2. *Individual-Capacity False Imprisonment Claims*

Turning to Grasso's individual-capacity false imprisonment claims, Grasso alleges that he was falsely imprisoned in two respects: (1) Powell's investigative detention of Grasso at the car wash/self-storage location; and (2) the fact that Grasso travelled to the WCSO to retrieve his phone and waited approximately ninety minutes. Doc. 9 ¶¶ 29–35.

Powell argues that he is entitled to statutory immunity under section 768.28(9)(a). Florida enacted a limited waiver of sovereign immunity, which provides:

> An officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. . . . The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers is by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or

> with malicious purpose or in a manner exhibiting wanton and willful
> disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a). Under this provision, a government employee cannot be named as a defendant in an action arising out of his employment unless he acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *See Parker v. Am. Traffic Sols., Inc.*, 835 F.3d 1363, 1369 (11th Cir. 2016) (citing *Keck v. Eminisor*, 104 So. 3d 359, 366 (Fla. 2012)); *Prieto v. Malgor*, 361 F.3d 1313, 1320 (11th Cir. 2004).

In this case, there is no dispute that at all relevant times Powell was acting within the scope of his employment as a deputy sheriff of the WCSO. Thus, to deprive Powell of the immunity conferred to him under section 768.28(9)(a), Grasso was required to allege facts that would permit a reasonable trier of fact to infer that Powell acted in bad faith, with a malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. *Peterson v. Pollack*, 290 So. 3d 102, 109 (Fla. 4th DCA 2020).

Florida courts have interpreted the phrase "bad faith" as "equat[ing] with the actual malice standard" in defamation cases. *See id.* (quoting *Parker v. State of Fla. Bd. of Regents ex rel. Fla. State Univ.*, 724 So. 2d 163, 167 (Fla. 1st DCA 1998)). The phrase "with malicious purpose" has been interpreted to mean that the conduct complained of was committed with "ill will, hatred, spite [or] an evil intent . . . [essentially with] the subjective intent to do wrong." *Peterson,* 290 So. 3d at 109

(quoting *Eiras v. Florida*, 239 F. Supp. 3d 1331, 1343 (M.D. Fla. 2017)). The phrase "wanton and willful disregard" of human rights, safety, or property has been construed to mean "conduct much more reprehensible and unacceptable than mere intentional conduct . . . and conduct that is worse than gross negligence." *Id.* (quoting *Richardson v. City of Pompano Beach*, 511 So. 2d 1121, 1123 (Fla. 4th DCA 1987) and *Sierra v. Assoc. Marine Insts, Inc.*, 850 So. 2d 582, 583 (Fla. 2d DCA 2003)).

### (a).   Detention of Grasso at the Car Wash/Self-Storage Location

Under Florida law, the existence of probable cause is an affirmative defense to a false arrest/false imprisonment claim. *Mailly v. Jenne*, 867 So.2d 1250, 1251 (Fla. 4th DCA 2004). Under Rule 12(b)(6), a court may dismiss a claim based on an affirmative defense when the allegations in the complaint "indicate the existence of an affirmative defense" and "the defense clearly appears on the face of the complaint." *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984), *aff'd on reh'g*, 764 F.2d 1400 (11th Cir. 1985) (en banc).

As noted above, Powell had probable cause to believe that Grasso had violated Florida law. Further, Grasso's allegations do not indicate that Powell detained Grasso at the car wash/self-storage location with malicious purpose or in bad faith. "[A] threadbare recital that a defendant 'acted maliciously and in bad faith is conclusory' and insufficient" to pierce the statutory-immunity defense and survive a motion to dismiss. *See Eiras*, 239 F. Supp. 3d at 1344 (quoting *Brivik v. Law*, 545

F. App'x 804, 807 (11th Cir. 2013)). Thus, the District Court should dismiss this claim with prejudice. *Fernander v. Bonis*, 947 So. 2d 584, 589 (Fla. 4th DCA 2007).

### (b). <u>The Duration Grasso Waited at the WCSO</u>

Grasso also asserts an individual-capacity false imprisonment claim against Powell because Grasso travelled to the WCSO and waited ninety minutes to retrieve his cellular telephone. Doc. 9 ¶¶ 16, 32–34.

To state a claim for false imprisonment under Florida law, a plaintiff must allege:

(1) the unlawful detention and deprivation of liberty of a person;

(2) the detention and deprivation were against that person's will;

(3) the defendant acted without legal authority or color of authority; and

(4) the detention was unreasonable and unwarranted under the circumstances.

*Mathis v. Coats*, 24 So. 3d 1284, 1289–90 (Fla. 2d DCA 2010); *Montejo v. Martin Mem'l Med. Ctr., Inc.*, 935 So. 2d 1266, 1268 (Fla. 4th DCA 2006).

According to Grasso's second amended complaint, Grasso transported himself to the WCSO in his own vehicle, and no law enforcement personnel were present in his vehicle when Grasso transported himself there. Doc. 9 ¶ 16. Furthermore, at the time he traveled to the WCSO and waited to retrieve his cellular telephone:

- Grasso was not under arrest, and no reasonable person in Grasso's position would have thought he was under arrest;

- Grasso was not in the custody or control of any law enforcement personnel;

- Grasso was not handcuffed at this time;

- nobody ordered Grasso to travel to the WCSO or forced him to remain there;

- nobody told Grasso that he would be arrested if he did not go to the WCSO; and

- Powell informed Grasso that he could go/had to go to the WCSO if he wanted to retrieve his cellular telephone.

Grasso has failed to allege facts which indicate that—during the interval he was driving to the WCSO and the ninety minutes he waited there—Powell detained Grasso or deprived him of liberty. Rather, it is clear from Grasso's allegations that Grasso elected to travel to the WCSO and wait there because he wanted to retrieve his cellular telephone and to recover the money he had used to purchase the Unit. *Id.* ¶ 32. Grasso tacitly concedes that he knew he was free to leave at any time and that he had reasonable means to depart whenever he desired to do so. *See Archer v. City of Winter Haven*, 846 F. App'x 759, 765 (11th Cir. 2021); *Turner v. Charter Sch. USA, Inc.*, No. 18-24005-CIV, 2020 WL 620392, at *1 (S.D. Fla. Jan. 14, 2020) (rejecting a false imprisonment claim where the plaintiff voluntarily accompanied the defendant and the defendant never denied him permission to leave), *report and recommendation adopted*, 2020 WL 924253 (S.D. Fla. Feb. 26, 2020), *aff'd sub nom. Turner v. Homestead Police Dep't*, 828 F. App'x 541 (11th Cir. 2020); *Ali v.*

*Margate Sch. of Beauty, Inc.*, No. 11-60102-CIV, 2011 WL 4625372, at *5 (S.D. Fla. Oct. 3, 2011) ("A plaintiff is not restrained when there is a reasonable means of escape, which is apparent or known to the person.") (quoting *In re Standard Jury Instructions in Civil Cases*, § 407.4, 35 So.3d 666 (Fla. 2010)). Under Florida law, therefore, Grasso has failed to allege facts that would constitute a detention or deprivation of liberty as required to allege the first element of a false imprisonment claim. *See Archer*, 846 F. App'x at 765.

Furthermore, because Grasso alleges that Powell told Grasso he needed to come to the WCSO *only if he wanted to retrieve his cellular telephone*—and Powell gave Grasso a choice whether to retrieve his cellular telephone—Grasso has failed to allege sufficient facts to satisfy the second element of a Florida false imprisonment claim: that his time at the WCSO was against Grasso's will. *See Lindsey v. Storey*, 936 F.2d 554, 562 n.10 (11th Cir. 1991) (rejecting a false arrest claim as meritless when the plaintiff voluntarily agreed to go to the sheriff's office); *cf. Paylan v. Teitelbaum*, 798 F. App'x 458, 467 (11th Cir. 2020) (rejecting a false arrest claim when the plaintiff voluntarily agreed to be confined). Powell afforded Grasso a choice. It may have been a difficult choice, but that does not negate Grasso's ability to choose otherwise.

Because Grasso failed to allege essential elements as to this claim, the District Court should dismiss Grasso's claim of false imprisonment under Florida law.

**D.**   <u>**Grasso's Official-Capacity Claims Under Florida Law**</u>

Powell next argues that to the extent Grasso is asserting official-capacity claims under Florida law, Grasso's claims must be dismissed because Powell is entitled to sovereign immunity. Doc. 26 at 4, 7, 12.

**1.**   ***Official-Capacity IIED Claim***

Powell first argues that Florida's limited waiver of sovereign immunity forecloses any official-capacity claim for IIED. Doc. 26 at 12.

As noted above, Florida enacted a limited waiver of its sovereign immunity in torts. When an employee is acting within the scope of his employment and does not act in bad faith, with a malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, the exclusive remedy is against the head of the entity employing the employee. Fla. Stat. § 768.28(9)(a). Conversely, Florida's limited waiver statute provides that

> The state or its subdivisions are not liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or [1] committed in bad faith or [2] with malicious purpose or [3] in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

*Butler v. Gualtieri*, 41 F.4th 1329, 1336 (11th Cir. 2022) (quoting Fla Stat. § 768.28(9)(a)); *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1330 (11th Cir. 2015).

The first essential element of a Florida IIED claim is that the defendant deliberately or recklessly inflicted mental suffering on the plaintiff. *Moore*, 806 F.3d at 1053; *Hart*, 894 F.2d at 1548 (citing *Metro. Life Ins. Co.*, 467 So. 2d at 278). The "reckless conduct" necessary to satisfy the first element of IIED is "the equivalent of willful and wanton conduct" under section 768.28(9)(a). *Williams v. City of Minneola*, 619 So. 2d 983, 986 (Fla. 5th DCA 1993). Because a successful IIED claim necessarily requires that the defendant engage in willful and wanton conduct, "Florida courts have long recognized that Fla. Stat. § 768.28(9)(a)" bars official-capacity IIED claims. *Weiland*, 792 F.3d at 1330 (*Williams*, 619 So. 2d at 986). The District Court, therefore, must dismiss with prejudice Grasso's official-capacity state IIED claim against Powell. *Weiland*, 792 F.3d at 1330; *Casado*, 340 F. Supp. 3d at 1331.

### 2.  *Official-Capacity False Imprisonment Claim*

Grasso's official-capacity false imprisonment claim is based on vicarious liability. That is, Grasso would hold Wakulla County liable for the acts of Powell, who is an employee of the WCSO. Under Fla. Stat. § 768.28, to prevail on a theory of vicarious liability against a municipality, a plaintiff must allege facts which indicate the employee is liable for the relevant tort. *See Laster v. City of Tampa Police Dep't*, 575 F. App'x 869, 873 (11th Cir. 2014).

Here, the relevant tort alleged by Grasso is false imprisonment. To state a claim for false imprisonment under Florida law, a plaintiff must allege: "(1) the unlawful detention and deprivation of liberty of a person (2) against that person's will (3) without legal authority or 'color of authority' and (4) which is unreasonable and unwarranted under the circumstances." *Mathis*, 24 So. 3d at 1289–90; *Montejo*, 935 So. 2d at 1268. Grasso attempts to allege this tort with respect to two events: (1) Powell's detention of Grasso at the car wash/self-storage location; and (2) the period Grasso waited at the WCSO to retrieve his cellular telephone.

### (a).   Detention at the Car Wash/Self-Storage Location

As to Powell's detention of Grasso at the carwash/self-storage location, as noted above, Grasso's allegations establish that Powell had probable cause to detain Grasso. The existence of probable cause is a complete bar to Grasso's claim of false imprisonment under Florida law. Because Grasso did not sufficiently allege a claim of false imprisonment against Powell, he cannot assert a claim for vicarious liability against the municipality for the same conduct. *See Laster*, 575 F. App'x at 873; *Moore v. Potter*, 141 F. App'x 803, 807 (11th Cir. 2005) ("Under Florida law, 'vicarious liability involves the imposition of liability on one person for the actionable conduct of another, based solely on a relationship between the two persons.'").

### (b). <u>The Duration Grasso Waited at the WCSO</u>

As discussed above, Grasso did not allege sufficient facts to show that Powell detained Grasso against his will when Powell offered Grasso a choice to leave or wait at the WCSO to retrieve Grasso's cellular phone. Grasso, therefore, failed to allege two essential elements of his claim and failed to state a claim for vicarious liability against the municipality for the same conduct. *See generally Laster*, 575 F. App'x at 873; *Moore*, 141 F. App'x at 807. Because Grasso has failed to allege sufficient facts to state two essential elements, the District Court should dismiss with prejudice Grasso's official-capacity claim of false imprisonment pursuant to Florida law.

### IV. CONCLUSION

In view of the foregoing, the undersigned respectfully **RECOMMENDS** that the District Court:

1.    **GRANT IN PART** and **DENY IN PART** Defendant's motion to dismiss, Doc. 26, as follows:

a.    **DISMISS** with prejudice Grasso's official-capacity section 1983 (Fourth Amendment) claim against Powell.

b.    **DISMISS** with prejudice Grasso's individual-capacity section 1983 (Fourth Amendment) claim against Powell regarding the arrest or detention of Grasso.

     c.    **DISMISS** with prejudice Grasso's claims of IIED and false Imprisonment—both individual- and official-capacity claims—brought pursuant to Florida law.

     d.    **DENY** Powell's motion to dismiss in all other respects.

2.    Refer this action back to the undersigned for further proceedings regarding Grasso's surviving section 1983 (Fourth Amendment) individual-capacity claim against Powell regarding the warrantless seizure and search of Grasso's cellular telephone.

At Pensacola, Florida, this <u>30th</u> day of January, 2023.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**The District Court referred this case to the undersigned to address all preliminary matters and to make recommendations regarding dispositive matters.** ***See*** **N.D. Fla. Loc. R. 72.2;** ***see also*** **28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation.** <u>**Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.**</u> **An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** ***See*** **11th Cir. Rule 3-1; 28 U.S.C. § 636.**