## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

MICHAEL GRASSO,

      Plaintiff,

v.                                    Case No. 4:21-cv-310-WS-MJF

DET. TYLER VARNER, *et al.*,

      Defendants.

_____/

## SECOND REPORT AND RECOMMENDATION

*Pro se* plaintiff Michael Grasso ("Grasso") initiated this civil action against three law enforcement officers for alleged violations of his Fourth-Amendment rights. Doc. 9 at 12.[1] Grasso also asserts state law claims for intentional infliction of emotional distress and false imprisonment. *Id.* at 11, 13. Two of the three law enforcement officers—Tyler Varner ("Varner") and Nicholas Gray ("Gray") of the Florida State University Police Department—filed a joint motion to dismiss Grasso's second amended complaint for failure to state a claim upon which relief can be granted. Doc. 45. Grasso has responded in opposition. Doc. 52. For the reasons set

---

[1] Grasso also sued Ard Contracting Inc ("Ard") for IIED. On July 8, 2022, the District Court granted Ard's motion to dismiss and dismissed Grasso's IIED claim against Ard. Doc. 46. On January 30, 2023, the undersigned issued a report and recommendation addressing the motion to dismiss of another defendant, Scott Powell. Doc. 57.

forth below, the District Court should grant in part and deny in part Defendants'
motion to dismiss.

## I. BACKGROUND

Grasso is a person with a disability who utilizes a service dog for "psychiatric
disabilities." Doc. 9 ¶ 22. According to Grasso's second amended complaint, on July
29, 2019, Grasso purchased a "total station" unit ("the Unit") from an online
marketplace known as "Offerup.com."[2] *Id.* ¶ 1. A "total station" unit is an electronic
and optical instrument used to measure distances and angles. The Unit had been
stolen from Ard, but Grasso alleges that he did not know this when he purchased the
Unit.

Once Grasso examined the calibration sticker which was found on the Unit—
and which Grasso had noticed prior to purchasing the Unit—Grasso determined
from the sticker that Ard had owned the Unit at some point. *Id.* Consequently, Grasso
contacted Ard and confirmed that Ard still owned the Unit. *Id.* Ard's employee, Mr.
Ard, directed Grasso to contact another Ard employee, "Dale," for more information
regarding the Unit.[3] *Id.*

---

[2] According to Grasso, Defendants knew that this website "frequently advertises
stolen property." *Id.* ¶ 21.

[3] Grasso did not provide Mr. Ard's Christian name, and he did not provide the
surname for "Dale."

Grasso telephoned Dale and informed Dale that he had purchased the Unit. Doc. 9 ¶ 2. Dale told Grasso that the Unit had been stolen and that Ard had reported the theft to the Tallahassee Police Department ("TPD").[4] *Id.* At Dale's behest, Grasso contacted the online seller of the Unit to inquire whether the seller possessed additional pieces of Ard's property. *Id.* ¶¶ 2–3.

On or about July 31, 2019, Grasso contacted TPD about its investigation of the theft, but TPD denied the existence of any such investigation. *Id.* ¶ 5. Grasso notified Dale that, according to TPD, TPD was not investigating the Unit's theft. *Id.* On August 1, 2019, Dale told Grasso to reach out to another Ard employee, James Beard, who informed Grasso that TPD had "tried to sting the seller [of the stolen Unit] the previous night." Doc. 9 ¶ 6.

On August 1, 2019, Beard informed Grasso that Ard needed to retrieve the Unit, and Beard promised Grasso a reward for the return of the Unit. *Id.* ¶ 10. The men agreed to meet at a car wash/self-storage location in the St. Marks area of Tallahassee where Grasso had stored the Unit. *Id.* ¶ 11.

On August 2, 2019, Grasso traveled to the car wash/self-storage location. *Id.* Varner and Gray and Deputy Scott Powell ("Powell") of the Wakulla County Sheriff's Office ("WCSO") made contact with Grasso at this location. *Id.*

---

[4] According to Grasso, Varner and Gray directed Ard employees to lie about which police agency was investigating the theft. *Id.* ¶¶ 8–9.

Powell "immediately" handcuffed Grasso "without explanation." *Id.* Grasso, however, does not specify the duration of the period he was handcuffed. In any event, while Grasso was handcuffed, without first obtaining a search or seizure warrant, Varner and Gray "ransack[ed]" Grasso's vehicle, confiscated Grasso's cellular telephone, and started reading text messages found on Grasso's telephone. Doc. 9 ¶¶ 11, 13.

Grasso objected to these warrantless searches, but Varner responded with a threat that Grasso would be incarcerated for five days. *Id.* ¶ 13. Varner also threatened to impound Grasso's service dog. *Id.* ¶ 22. Varner elaborated that this could result in the euthanization of Grasso's dog. *Id.* ¶ 13.

Because Grasso feared that Varner and Gray would delete exculpatory text messages from his cellular telephone, Grasso acquiesced to Varner and Gray searching his cellular telephone and showed Varner and Gray where they could locate messages between the person who sold Grasso the Unit and Grasso. *Id.* ¶ 14.

Powell then removed the handcuffs. *Id.* Grasso unlocked his storage locker, retrieved the Unit, and surrendered the Unit to Varner. *Id.* Despite the fact that Grasso already had surrendered the Unit and instructed Varner to "stay out of the storage unit," Varner searched Grasso's storage unit without first having obtained a search warrant. Doc. 9 ¶ 16.

Although Grasso does not specifically allege that he requested the return of his cellular telephone, he contends that "Varner, [Gray], and Powell refused to return [the] phone and stated that if [Grasso] wanted it back he would have to go to the WCSO station to retrieve it." *Id.* Defendants delivered the phone to the WCSO, and unnamed detectives and Powell searched the phone for approximately ninety minutes without first obtaining a search warrant. *Id.* ¶¶ 16, 26.

Based on these allegations, Grasso asserts three claims against Varner and Gray:

- a violation of the Fourth Amendment based on their roles in the detention of Grasso, the search of Grasso's vehicle, the search and seizure of Grasso's cellular telephone, and the search of Grasso's storage unit;

- IIED under Florida law; and

- false imprisonment under Florida law based on (a) Grasso's detention while Defendants searched Grasso's car; and (b) the time Grasso spent at the WCSO waiting to retrieve his cellular telephone.

*Id.* at 11–13. Grasso does not specify whether he is asserting his claims against Varner and Gray in their official or individual capacities. The undersigned, therefore, addresses Grasso's claims as though he were asserting both individual- and official-capacity claims. For relief, Grasso seeks general, special, and punitive damages. *Id.* at 4.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion-to-dismiss stage, the court accepts all well-pleaded factual allegations of the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022) (citation omitted). For a claim to survive dismissal, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," rather than the mere possibility that the defendant acted unlawfully. *Id.* (*citing Twombly*, 550 U.S. at 556). That is, the complaint's factual allegations must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678 (reiterating that Federal Rule of Civil Procedure 8 demands "more than an unadorned, the-defendant-unlawfully-harmed–me accusation"). "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Doe v. Samford Univ.*, 29

F.4th 675, 685 (11th Cir. 2022) (citation and internal quotation marks omitted). Courts "hold the allegations of a *pro se* complaint to less stringent standards than formal pleadings drafted by lawyers." *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014) (*citing Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

### III. DISCUSSION

### A.    <u>Grasso Failed to State a Section 1983 Official-Capacity Claim</u>

"[O]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S 658, 690 n.55 (1978)); *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). In other words, in a section 1983 action "a claim against a defendant in his official capacity is the same as a claim against his employer." *Christman v. Saint Lucie Cnty.*, 509 F. App'x 878, 879 (11th Cir. 2013) (citing *McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 n.2 (1997)). Thus, when a "section 1983 plaintiff sues government employees (such as police officers) in their official capacities, the suit is in actuality against the governmental entity that the individuals represent." *Farred v. Hicks*, 915 F.2d 1530, 1532 (11th Cir. 1990).

The Eleventh Amendment is generally a bar to lawsuits for monetary damages by an individual against a state or its agencies, or against officers or employees of the state or its agencies in their official capacities, unless the state has consented to

suit, Congress has abrogated the immunity, or the plaintiff proceeds under *Ex parte Young* for prospective injunctive relief. *See Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974); *Seminole Tribe of Fla. v. State of Fla.*, 11 F.3d 1016, 1021 (11th Cir. 1994) (citing *Penhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)).

A claim against Varner and Gray in their official capacities is a claim against their employer, the Florida State University Police Department. In this case, Varner and Gray, in their official capacities, are entitled to Eleventh-Amendment immunity. *See Doe v. Univ. of Ala. in Huntsville*, 177 F. Supp. 3d 1380, 1393 (N.D. Ala. 2016) (dismissing section 1983 official-capacity claims for damages against a university police officer because Eleventh-Amendment immunity bars those claims) *Gibbons v. McBride*, 124 F. Supp. 3d 1342, 1359 (S.D. Ga. 2015) (same); *Shinholster v. Graham*, 527 F. Supp. 1318, 1331 (N.D. Fla. 1981) (noting that Florida State University Police Officers in their official capacity are immune from damages in a section 1983 suit because of Eleventh-Amendment immunity). Accordingly, the District Court must dismiss Grasso's official-capacity claims against Varner and Gray

## B.    Grasso Failed to State a Claim as to Defendants' Detention of Grasso

Grasso alleges in his second amended complaint that Varner and Gray violated the Fourth Amendment when they briefly detained Grasso when he arrived at the car wash/self-storge location. Doc. 9 ¶¶ 24, 27. Gray and Varner argue that

Grasso failed to state a claim under the Fourth Amendment for false arrest and that they are entitled to qualified immunity. Doc. 45 at 7–13.

"Under the qualified immunity doctrine, government officials performing discretionary functions are immune not just from liability, but from suit, unless the conduct which is the basis for suit violates clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Sanders v. Howze*, 177 F.3d 1245, 1249 (11th Cir. 1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To be entitled to qualified immunity, the defendant must first establish that he was acting within the scope of his discretionary authority." *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013)). Once that is shown, "the burden shifts to the plaintiff to establish that qualified immunity is not appropriate." *Id.*

In resolving questions of qualified immunity, courts engage in a two-pronged inquiry. *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1319, 1325 (11th Cir. 2016) (resolving question of qualified immunity at motion-to-dismiss stage). At the motion-to-dismiss stage, the first prong applies the *Twombly-Iqbal* plausibility standard. The court must ask whether the plaintiff's complaint contains sufficient factual matter, accepted as true, to state a plausible violation of a constitutional right. *See id.* The second prong asks whether that right was clearly established at the time of the defendant's conduct. *Id.* at 1325.

Consistent with the Fourth Amendment, "an officer may . . . conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Jackson v. Sauls*, 206 F.3d 1156, 1165 (11th Cir. 2000); *see Terry v. Ohio*, 392 U.S. 1, 30 (1968). A "reasonable, articulable suspicion" is less than probable cause; it requires only "a minimal level of objective justification." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *see Kansas v. Glover*, 589 U.S. ___, 140 S. Ct. 1183, 1187 (2020) (reasonable suspicion requires "considerably less than proof of wrongdoing by a preponderance of the evidence") (quoting *Navarette v. California*, 572 U.S. 393, 397 (2014)).

Here, according to Grasso's allegations, Varner and Gray were investigating the theft of Ard's property. Florida law prohibits theft of property and the possession of stolen property when the possessor knows that it was stolen.

> (1) A person commits theft if he or she knowingly obtains . . . the property of another with intent to, either temporarily or permanently:
>
>> (a)  Deprive the other person of a right to the property or a benefit from the property [or]
>>
>> (b)  Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

Fla. Stat. § 812.014. Furthermore, "proof of possession of property recently stolen, unless satisfactorily explained, gives rise to the inference that the person in

possession of the property knew or should have known that the property had been stolen." Fla. Stat. § 812.022(2).

According to the allegations in Grasso's second amended complaint:

- On July 29, 2019, Grasso purchased and thereafter possessed the Unit, which was a piece of stolen property;

- On July 29, 2019, upon inspecting the Unit, Grasso suspected that it was stolen property;

- Grasso "immediately"—*i.e.*, on July 29, 2019—informed Ard personnel that he (Grasso) was in possession of the Unit;

- Ard personnel informed Grasso that the Unit cost $10,000, but Grasso claimed that he paid only $150 for the Unit[5];

- From July 29, 2019 through August 2, 2019, Grasso knew that he possessed stolen property because Ard personnel informed him of that[6];

- Despite knowing that he possessed stolen property, Grassso did not return the property to Ard or offer to return it to Ard and Grasso also did not take the Unit to the police;

- On August 1, 2019, an employee of Ard arranged to meet Grasso on an unspecified date at the car wash/self-storage location to retrieve the Unit after offering Grasso a reward in exchange for Grasso surrendering the Unit;

---

[5] A reasonable law enforcement officer would be skeptical of Grasso's claim that he purchased for only $150 an item valued at $10,000.

[6] Although Grasso alleges that he made contact with the lawful owner of the Unit on July 29, 2019, he does not indicate that he offered to return the Unit to Ard until an Ard employee notified Grasso that Ard needed to retrieve the Unit and that he would provide Grasso a reward. *Id.* ¶ 10.

- On August 1, 2019, Grasso and the Ard employee agreed upon a time and location to meet; and

- On August 2, 2019, Grasso appeared at the pre-arranged location to collect the reward and surrender the Unit.[7]

Under these circumstances, Varner and Gray had reasonable suspicion that Grasso was involved in criminal activity sufficient to conduct an investigatory detention.[8] *See, e.g.*, *Archer v. City of Winter Haven*, No. 8:16-CV-3067-T-36AAS, 2018 WL 8806892, at *5 (M.D. Fla. Sept. 26, 2018); *Anderson v. Wal-Mart Stores, Inc.*, No. 12-61047-CIV, 2013 WL 773473, at *7 (S.D. Fla. Feb. 28, 2013); *Jackson v. Capraun*, 534 F. App'x 854, 856 (11th Cir. 2013). Indeed, based on the allegations in Grasso's second amended complaint, Varner and Gray had probable cause to arrest Grasso.[9] As Grasso concedes in his second amended complaint, Grasso

---

[7] In his second amended complaint, Grasso never specifies the date he encountered Varner and Gray, but based on the timeline Grasso alleges in his second amended complaint, it appears that the encounter occurred on August 2, 2019.

[8] For purposes of qualified immunity, a defendant does not need to establish that he had reasonable suspicion. *Whittier v. Kobayashi*, 581 F.3d 1304, 1308 (11th Cir. 2009); *Jackson*, 206 F.3d at 1166. Instead, the officer must demonstrate only the existence of "arguable" reasonable suspicion. *Whittier*, 581 F.3d at 1308; *Jackson*, 206 F.3d at 1166.

[9] Probable cause exists when the facts, considering the totality of the circumstances and viewed from the perspective of a reasonable officer, establish "a probability or substantial chance of criminal activity." *District of Columbia v. Wesby*, 583 U.S. ___, 138 S. Ct. 577, 586 (2018) (internal quotation marks omitted). Probable cause is "not a high bar." *United States v. Delgado*, 981 F.3d 889, 897 (11th Cir. 2020) (quoting *Wesby*, 138 S. Ct. at 586). "Probable cause does not require the same type

  
possessed stolen property after learning that it was stolen. That and the other suspicious circumstances mentioned above created probable cause.

Furthermore, although Grasso does not specify the duration of his detention, Grasso alleges that once he agreed to give the Unit to Varner, Powell released Grasso. Doc. 9 ¶ 14. Thus, Grasso has not alleged facts which indicate that the detention extended to an unreasonable duration. Because it is apparent from Grasso's second amended complaint that Varner and Grays' detention was based on probable cause and did not extend for an unreasonable duration, Varner and Gray are entitled to qualified immunity on Grasso's Fourth-Amendment claim regarding the investigatory detention.

## C.   The Warrantless Search of Grasso's Vehicle

Grasso also alleges that Varner and Gray violated the Fourth Amendment by searching his vehicle without first obtaining a search warrant. *Id.* at ¶¶ 25, 27–28. Varner and Gray argue that Grasso failed to state a claim upon which relief can be granted because they were entitled to conduct warrantless searches based on the

---

of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972).

The fact that Grasso informed Varner and Gray that he was not the thief who stole the Unit does not immediately negate probable cause. "[P]robable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts . . . ." *Id.* at 588. Upon an initial encounter with a suspect, a "police officer need not resolve conflicting evidence in a manner favorable to the suspect." *Washington v. Howard*, 25 F.4th 891, 902 (11th Cir. 2022).

"search incident to arrest" exception to the requirement that they obtain a search warrant. Doc. 45 at 13–14.

The Supreme Court has interpreted the Fourth Amendment generally to require government agencies to obtain a search warrant prior to seizing or searching items and places in which a person has a reasonable expectation of privacy. *Kentucky v. King*, 563 U.S. 452, 459 (2011). There are, however, a number of exceptions to this general rule. *Arizona v. Gant*, 556 U.S. 332, 338 (2009).

A warrantless search of a vehicle is permissible when the driver who recently occupied the vehicle is arrested and it "is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 351; *United States v. Clark*, 32 F.4th 1080, 1089 n.3 (11th Cir. 2022). As noted above, Varner and Gray had probable cause to arrest Grasso for theft under Florida law. Under the circumstances of this case, it would be entirely reasonable for Varner and Gray to believe that evidence of the crime—including the stolen Unit that Grasso was bringing to surrender to Ard and collect the reward—would be in Grasso's vehicle. Several facts alleged in Grasso's second amended complaint support this conclusion:

- Grasso was in possession of the stolen Unit;

- On August 1, 2019, Grasso and the Ard employee agreed upon a time and location to meet;

- In his vehicle, Grasso travelled to the location to meet an Ard employee to return the stolen Unit and collect a reward; and

- On August 2, 2019, Varner and Gray could see that Grasso appeared in his vehicle at the pre-arranged location to collect the reward and surrender the Unit.[10]

Based on these facts, it would be reasonable for Varner and Gray to conclude that evidence of the theft of the Unit—including the Unit itself—would be found in Grasso's vehicle. *See United States v. Adigun*, 567 F. App'x 708, 714 (11th Cir. 2014).

Because Varner and Gray searched Grasso's vehicle incident to an arrest and they reasonably could believe that Grasso's vehicle contained evidence of the offense of arrest, Varner and Gray did not violate the Fourth Amendment by searching Grasso's vehicle. Accordingly, as to the search of his vehicle, Grasso has failed to state a claim upon which relief can be granted, and the District Court should dismiss this claim.

## D.    The Warrantless Search and Seizure of Grasso's Cellular Telephone

Grasso further alleges that Varner and Gray violated the Fourth Amendment by seizing and searching his cellular telephone without first obtaining a search or seizure warrant. Varner and Gray argue that the search of Grasso's cellular telephone was "justified by probable cause for Plaintiff's arrest." Doc. 45 at 13–14.

---

[10] As noted above, Grasso's second amended complaint never specifies the date he encountered Varner and Gray.

The Fourth Amendment limits the ability of government agents to search cellular telephones to obtain information. *Riley v. California*, 573 U.S. 373, 401 (2014). A "warrant is generally required before" government agents may search a cellular telephone "*even when a cell phone is seized incident to arrest*." *Id.*

There is no indication in the records that anyone obtained a search or seizure warrant to search or seize Grasso's cellular telephone. Based on the facts alleged by Grasso, he has stated a section 1983 claim against Varner and Gray for a violation of the Fourth Amendment with respect to their warrantless seizure and search of Grasso's cellular telephone.[11] Grasso's right to privacy regarding his cellular telephone was clearly established. *Id.* Varner and Gray, therefore, have not demonstrated that they are entitled to qualified immunity on this claim. Accordingly, the District Court should deny Varner and Gray's motion to dismiss this claim.

## E.    The Warrantless Search of Grasso's Storage Unit

Grasso further alleges that Varner and Gray violated the Fourth Amendment by searching his storage unit without first obtaining a search warrant. Varner and

---

[11] Varner and Gray wisely have not argued at this juncture that Grasso "consented" to the seizure and search of his cellular telephone. According to the facts alleged by Grasso in his second amended complaint, the District Court could not determine that Grasso voluntarily consented to the seizure and search of his cellular telephone. *See Schneckloth v, Bustamonte,* 412 U.S. 218, 233 (1973) ("[I]f under all the circumstances it has appeared that the consent was not given voluntarily—that it was coerced by threats or force, or granted only in submission to a claim of lawful authority—then we have found the consent invalid and the search unreasonable.").

Gray again argue that the search of Grasso's storage unit was "justified by probable cause for Plaintiff's arrest." Doc. 45 at 13–14.

A person has a reasonable expectation of privacy in the contents of a secured storage unit that is rented or controlled by that person. *See v. City of Seattle*, 387 U.S. 541, 543 (1967); *United States v. Chaves*, 169 F.3d 687, 690–91 (11th Cir. 1999); *United States v. Baron–Mantilla*, 743 F.2d 868, 870 (11th Cir. 1984). Thus, to search such a storage unit, a law enforcement agent first must obtain a search warrant or there must exist some exception to the requirement to obtain a search warrant.

Here, Grasso does not allege that Varner and Gray had a search warrant to search Grasso's storage unit, and Varner and Gray also do not allege this. Varner and Gray's conclusory assertion—composed of not even one full sentence of analysis—that the existence of "probable cause" justified their warrantless search of Grasso's storage unit simply is incorrect. *See Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) (per curiam) (absent exigent circumstances, the existence of probable cause is not sufficient in itself to enter a building and conduct a search); *see also Agnello v. United States*, 269 U.S. 20, 33 (1925). To "excuse the failure to obtain a warrant merely because the officers had probable cause . . . would completely obviate the warrant requirement." *United States v. Mejia*, 69 F.3d 309, 320 (9th Cir. 1995) (quoting *United States v. Echegoyen*, 799 F.2d 1271, 1280 n.7 (9th Cir. 1986));

*United States v. Brown*, 64 F.3d 1083, 1085 (7th Cir. 1995). Tellingly, Varner and Gray do not cite any authority for their conclusion otherwise.

Grasso has stated a claim upon which relief can be granted regarding Varner and Gray's search of his storage unit. Because this right was clearly established at the time Varner and Gray conducted the search, Varner and Gray have not demonstrated that they are entitled to qualified immunity on this claim. Accordingly, the District Court should deny Varner and Gray's motion to dismiss this claim.

**F.    Grasso's Official-Capacity Claims Under Florida Law**

Varner and Gray next argue that Grasso's official-capacity claims under Florida law must be dismissed because Grasso failed to comply with the pre-suit notice requirements of Florida Statute § 768.28. Doc. 45 at 20–22.

Section 768.28 sets forth the conditions by which "the state, for itself and for its agencies or subdivisions" waives sovereign immunity with respect to its liability for torts committed by their employees. Pursuant to section 768.28, Florida has waived sovereign immunity for any negligent or wrongful acts committed by its employees during the scope of their employment. Fla. Stat. § 768.28(9)(a); *see White v. Hillsborough Cnty. Hosp. Auth.*, 448 So. 2d 2, 2 (Fla. 2d DCA 1983) (holding that governmental employee was personally immune from ordinary negligence claim as that claim could be brought only against the governmental entity under § 768.28(9)).

To maintain a claim in tort against the Florida State University Police Department based on any negligent or wrongful conduct by Varner and Gray, Grasso was required to satisfy the notice-of-claim requirements found in section 768.28(6)(a). *Woodburn v. Fla. Dep't of Child. & Fam. Servs.*, 854 F. Supp. 2d 1184, 1207–08 (S.D. Fla. 2011). Section 768.28(6)(a) states:

> An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality, county or the Florida Space Authority, presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing.

Fla. Stat. § 768.28(6)(a).

> Compliance with section 768.28's notice provision requires three things:

> First, the claimant must present the claim to the agency in writing. Second, the claimant must present the claim to the Department of Insurance in writing. Third, the claim proffered to the Department must be presented within three years after it accrues and the agency or the Department denies the claim in writing.

*Menendez v. N. Broward Hosp. Dist.*, 537 So. 2d 89, 91 (Fla. 1988) (per curiam).[12]

"The presuit notice requirement is a condition precedent . . . which serves the purpose of giving the appropriate entities an opportunity to investigate and time to

---

[12] For purposes of providing notice pursuant to section 768.28, Florida's former Department of Insurance is now the "Department of Financial Services." *See Nelson v. Hillsborough Cnty.*, 189 So. 3d 1037, 1039 (Fla. 2d DCA 2016); *Lederer v. Orlando Util. Comm'n*, 981 So. 2d 521, 523 (Fla 5th DCA 2008).

respond." *Maynard v. State, Dep't of Corr.*, 864 So. 2d 1232, 1233–34 (Fla. 1st DCA 2004) (first citing *Metro. Dade Cnty. v. Reyes,* 688 So. 2d 311 (Fla. 1996); then citing *Cunningham v. Dep't of Child. & Fams.,* 782 So. 2d 913 (Fla. 1st DCA)). This notice requirement is "strictly construed" and "strict compliance" with the statute is required. *Id*. Further, a plaintiff must allege in his complaint that the plaintiff satisfied this pre-suit notice requirement. *See Comm'l Carrier Corp. v. Indian River Cnty.*, 371 So. 2d 1010, 1023 (Fla. 1979); *Bryant v. Duval Cnty. Hosp. Auth.*, 502 So. 2d 459, 462 (Fla. 1st DCA 1986).

Here, Grasso was required to provide written notice of his claims to both the Florida State University Police Department and the Florida Department of Financial Services no later than August 2, 2022. *See* Doc. 9 ¶ 11 (indicating that the event underlying the claim occurred on August 2, 2019). Additionally, he was required to plead in his complaint that he satisfied this pre-suit notice requirement. Grasso did neither. *See* Doc. 9; Doc. 52.

Because Grasso did not comply with the statute—and he cannot timely cure his failure to provide the required pre-suit notice—sovereign immunity operates as a bar to any tort claims asserted against the Florida State University Police Department which arise from the alleged negligent or wrongful actions committed by Varner and Gray. The District Court, therefore, should dismiss Grasso's official-capacity state law claims against Varner and Gray. *Levine v. Dade Cty. Sch. Bd.,* 442

So. 2d 210, 213 (Fla. 1983) (concluding that dismissal with prejudice is appropriate when plaintiff has not provided the notice required under § 768.28 and the time for such notice has expired) (citation omitted).

## G.    Grasso Failed to State an Individual-Capacity IIED Claim

Varner and Gray next argue that Grasso's IIED claim fails because he failed to plead sufficiently facts showing that Varner and Gray's conduct was outrageous and that it caused Grasso severe emotional distress. Doc. 45 at 14–17.

Under Florida law, a person "who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress[.]" *E. Airlines, Inc. v. King*, 557 So. 2d 574, 575–76 (Fla. 1990) (citations omitted). To state an IIED claim, a plaintiff must allege four essential elements:

(1) the defendant deliberately or recklessly inflicted mental suffering on the plaintiff;

(2) the defendant's conduct was outrageous;

(3) the defendant's conduct caused the plaintiff's emotional distress; and

(4) the plaintiff's emotional distress was severe.

*Moore v. Pederson*, 806 F.3d 1036, 1053 (11th Cir. 2015) (citation omitted); *Tillman v. Orange Cnty.*, 519 F. App'x 632, 636 (11th Cir. 2013) (per curiam) (citation omitted); *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278 (Fla. 1985).

Here, Grasso has failed to allege two essential elements of an IIED claim.

### 1.    *Failure to Allege Extreme and Outrageous Conduct*

As to the second element, a plaintiff must state facts which show that the defendant's actions were "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Metro. Life Ins. Co.*, 467 So. 2d at 278–79 (quoting Restatement (Second) of Torts § 46 (1965)); *see also Lopez v. Target Corp.*, 676 F.3d 1230, 1236 (11th Cir. 2012). Florida law imposes on plaintiffs a "particularly high" standard with respect to the type of actions that constitute "outrageous conduct." *Pierre v. City of Miramar, Fla., Inc*., 537 F. App'x 821, 827 (11th Cir. 2013) (citation omitted); *Foreman v. City of Port St. Lucie*, 294 F. App'x 554, 557 (11th Cir. 2008).

In that regard, liability for an IIED claim "does not extend to mere insults, indignities, threats, or false accusations." *See Lopez*, 676 F.3d at 1236 (citation and internal quotation marks omitted); *see also Koutsourradis v. Delta Air Lines, Inc*., 427 F.3d 1339, 1344–45 (11th Cir. 2005) (per curiam) (noting that "mere insults and indignities" do not support an IIED claim under Florida law) (citations omitted). Mere deception also does not amount to extreme outrageous conduct required for an IIED claim. *Gonzalez-Jimenez de Ruiz v. United States*, 231 F. Supp. 2d 1187, 1159 (M.D. Fla. 2002). Further, the fact that the conduct at issue was tortious, criminal,

intended to inflict emotional distress, or characterized by malice is insufficient in itself to constitute "outrageous" conduct. *E. Airlines, Inc.*, 557 So. 2d at 576; *Metro. Life Ins. Co.*, 467 So. 2d at 279. Although there are exceptions, the "outrageous" conduct necessary to sustain a claim typically requires "offensive physical contact." *McGinty v. Tracphone Wireless, Inc.*, 5 F. Supp. 3d 1337, 1341 (M.D. Fla. 2014).

When evaluating whether alleged conduct is sufficiently outrageous, "the court must make an objective determination, and the subjective response of the person suffering emotional distress does not control." *Lincoln v. Fla. Gas Transmission Co.*, 608 F. App'x 721, 722 (11th Cir. 2015). Whether conduct is sufficiently "outrageous" to state an IIED claim is a question of law for the court to decide. *Id.*; *Vance v. S. Bell Tel. & Tel. Co.*, 983 F.2d 1573, 1575 n.7 (11th Cir. 1993).

Here, Grasso's IIED claim is based on his allegations that

> [Varner and Gray] intended to cause Plaintiff's emotional distress or acted with reckless disregard of the probability that Plaintiff would suffer emotional distress, knowing that [Varner and Gray] were intentionally plotting against Plaintiff and intentionally preventing Plaintiff from taking the equipment to the police or returning it directly to . . . Ard. . . . Once . . . Varner became aware that Plaintiff's service dog was for psychiatric disabilities, [Varner] continually, with malice, threatened Plaintiff with arrest and the sheltering and possible euthanizing of Plaintiff's service dog with intent of causing severe emotional distress to Plaintiff.

Doc. 9 ¶¶ 21–22.

Taking Grasso's allegations as true, Varner knew that Grasso was a person with a disability and that he used a service dog as support for his disability. Despite that knowledge, Varner threatened to jail Grasso for five days, threatened to impound Grasso's service dog, and threatened that Grasso's dog would be killed. *Id.* ¶¶ 18–22.

Grasso's allegations do not meet the high pleading standard needed to state a claim of IIED. Mere threats are insufficient to support an IIED claim. *See Lopez*, 676 F.3d at 1236. Thus, Varner's threats, without more, cannot be said to be so outrageous as to go beyond all possible bounds of decency, to be regarded as atrocious, or to be utterly intolerable in a civilized community.

Although Grasso alleges that Deputy Scott Powell handcuffed and detained Grasso for an unspecified period while Varner and Gray searched his truck and cell phone, such conduct is not sufficiently offensive to constitute IIED. *Williams v. Allen,* No. 6:17-cv-00242-ORl-31DCI, 2017 WL 1653744, at *6 (M.D. Fla. May 2, 2017); *Pierce v. Clayton Cnty.*, No. 1:16-cv-779-ODE, 2016 WL 10537013, at *6 (N.D. Ga. Oct. 11, 2016); *Frias v. Demings*, 823 F. Supp. 2d 1279, 1289 (M.D. Fla. 2011); *see also Rubio v. Lopez*, 445 F. App'x 170, 175 (11th Cir. 2011) (allegations that a deputy sheriff hobble-tied arrestee on black asphalt pavement in the sun, resulting in second-degree burns to face and chest, was insufficient to state a claim of IIED).

Because Grasso failed to state a claim of IIED upon which relief can be granted, the District Court should grant Varner and Gray's motion to dismiss this claim.

### 2.    *Failure to Allege Severe Emotional Distress*

There is a second, independent reason for the District Court to dismiss Grasso's IIED claim: Grasso failed to allege that he suffered serve emotional distress.

A plaintiff attempting to allege the "severe emotional distress" element of an IIED claim must allege that he suffered distress so severe that no reasonable man could be expected to endure it. *Casado v. Miami-Dade Cnty.*, 340 F. Supp. 3d 1320, 1332 (S.D. Fla. 2018). In other words, the distress must be "of such a substantial quality or enduring quality, that no reasonable person in a civilized society should be expected to endure it." *Kraeer Funeral Homes, Inc. v. Noble*, 521 So. 2d 324, 325 (Fla. 4th DCA 1988) (per curiam); *Kim v. Jung Hyun Chang*, 249 So. 3d 1300, 1305–06 (Fla. 2d DCA 2018).

Grasso's bare assertion that Varner and Gray caused him severe emotional distress is insufficient to allege that the distress inflicted was so severe that no reasonable person could endure it. Grasso's failure to allege this second essential element of his IIED claim also warrants dismissal of the claim against Varner and Gray.

**H.**   **Failure to State Individual-Capacity Claims for False Imprisonment**

Turning to Grasso's individual-capacity false imprisonment claims, Grasso alleges that he was falsely imprisoned in two respects: (1) Powell's investigative detention of Grasso at the car wash/self-storage location; and (2) the fact that Grasso travelled to the WCSO to retrieve his phone and waited approximately ninety minutes. Doc. 9 ¶¶ 29–35.

Under Florida law, there are four essential elements of a cause of action for false imprisonment[13]:

(1) the plaintiff was unlawfully detained or deprived of liberty;

(2) the plaintiff was detained against his will;

(3) the plaintiff was detained without legal authority or color of authority; and

(4) the plaintiff's detention was unreasonable and unwarranted.

*Montejo v. Martin Mem'l Med. Ctr. Inc.*, 935 So. 2d 1266, 1268 (Fla. 4th DCA 2006) (citations omitted); *see Alvoid as next friend A.R.A v. Sch. Dist. of Escambia Cnty.*, 582 F. Supp. 3d 1140, 1148 (N.D. Fla. 2021).

---

[13] "[U]nder Florida law false arrest and false imprisonment are different labels for the same cause of action." *Coleman v. Hillsborough Cnty.*, 41 F.4th 1319, 1327 (11th Cir. 2022) (quoting *Rankin v. Evans*, 133 F.3d 1425, 1430 n.5 (11th Cir. 1998)); *Spears v. Albertson's, Inc.*, 848 So.2d 1176, 1178 (Fla. 1st DCA 2003).

1.  *Detention of Grasso at the Car Wash/Self-Storage Location*

As to Defendant's detention of Grasso at the carwash/self-storage location, Varner and Gray argue that Florida's "Stop and Frisk" statute authorized their temporary detention of Grasso and that they had probable cause to believe that Grasso committed a crime. Doc. 45 at 7–12.

Under Florida law, the existence of probable cause is an affirmative defense to a false imprisonment claim. *Mailly v. Jenne*, 867 So. 2d 1250, 1251 (Fla. 4th DCA 2004).[14] As demonstrated above, Varner and Gray had probable cause to detain Grasso at the carwash/self-storage location. Probable cause is a complete bar to an action for false arrest. *Delgado v. City of Miami*, 990 F. Supp. 2d 1381, 1383 (S.D. Fla. 2014) (noting that "[p]robable cause is a complete bar to an action for false arrest" under Florida law) (citing *Bolanos v. Metro. Dade Cnty.*, 677 So. 2d 1005, 1005 (Fla. 3d DCA 1996)); *Fernander v. Bonis*, 947 So. 2d 584, 589 (Fla. 4th DCA 2007). Therefore, Grasso's false arrest claim under Florida law must be dismissed for failure to state a claim upon which relief can be granted.

---

[14] Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a district court may dismiss a claim based on an affirmative defense when the allegations in the complaint "indicate the existence of an affirmative defense" and "the defense clearly appears on the face of the complaint." *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984), *aff'd on reh'g*, 764 F.2d 1400 (11th Cir. 1985) (en banc).

## 2.    *The Duration Grasso Waited at the WCSO*

Grasso also asserts an individual-capacity false imprisonment claim against Varner and Gray because Grasso travelled to the WCSO and waited ninety minutes to retrieve his cellular telephone. Doc. 9 ¶¶ 16, 32–34.

According to Grasso's second amended complaint, Grasso transported himself to the WCSO in his own vehicle, and no law enforcement personnel were present in his vehicle when Grasso transported himself there. *Id.* ¶ 16. Furthermore, at the time he traveled to the WCSO and waited to retrieve his cellular telephone:

- Grasso was not under arrest, and no reasonable person in Grasso's position would have thought he was under arrest;

- Grasso was not in the custody or control of any law enforcement personnel;

- Grasso was not handcuffed at this time;

- nobody ordered Grasso to travel to the WCSO or forced him to remain there;

- nobody told Grasso that he would be arrested if he did not go to the WCSO; and

- Varner and Gray informed Grasso that he could go/had to go to the WCSO if he wanted to retrieve his cellular telephone.

Grasso has failed to allege facts which indicate that—during the interval he was driving to the WCSO and the ninety minutes he waited there—Varner and Gray detained Grasso or deprived him of liberty. Rather, it is clear from Grasso's allegations that Grasso elected to travel to the WCSO and wait there because he

wanted to retrieve his cellular telephone and to recover the money he had used to purchase the Unit. *Id.* ¶ 32. Grasso tacitly concedes that he knew he was free to leave at any time and that he had reasonable means to depart whenever he desired to do so. *See Archer v. City of Winter Haven*, 846 F. App'x 759, 765 (11th Cir. 2021); *Turner v. Charter Sch. USA, Inc.*, No. 18-24005-CIV, 2020 WL 620392, at *1 (S.D. Fla. Jan. 14, 2020) (rejecting a false imprisonment claim where the plaintiff voluntarily accompanied the defendant and the defendant never denied him permission to leave), *report and recommendation adopted*, 2020 WL 924253 (S.D. Fla. Feb. 26, 2020), *aff'd sub nom. Turner v. Homestead Police Dep't*, 828 F. App'x 541 (11th Cir. 2020); *Ali v. Margate Sch. of Beauty, Inc.*, No. 11-60102-CIV, 2011 WL 4625372, at *5 (S.D. Fla. Oct. 3, 2011) ("A plaintiff is not restrained when there is a reasonable means of escape, which is apparent or known to the person.") (quoting *In re Standard Jury Instructions in Civil Cases*, § 407.4, 35 So. 3d 666 (Fla. 2010)). Under Florida law, therefore, Grasso has failed to allege facts that would constitute a detention or deprivation of liberty as required to allege the first element of a false imprisonment claim. *See Archer*, 846 F. App'x at 765.

Furthermore, because Grasso alleges that Varner and Gray told Grasso he needed to come to the WCSO *only if he wanted to retrieve his cellular telephone*—and they gave Grasso a choice whether to retrieve his cellular telephone—Grasso has failed to allege sufficient facts to satisfy the second element of a Florida false

imprisonment claim: that his time at the WCSO was against Grasso's will. *See Lindsey v. Storey*, 936 F.2d 554, 562 n.10 (11th Cir. 1991) (rejecting a false arrest claim as meritless when the plaintiff voluntarily agreed to go to the sheriff's office); *cf. Paylan v. Teitelbaum*, 798 F. App'x 458, 467 (11th Cir. 2020) (rejecting a false arrest claim when the plaintiff voluntarily agreed to be confined). Varner and Gray afforded Grasso a choice. It may have been a difficult choice, but that does not negate Grasso's ability to choose otherwise.

Because Grasso failed to allege essential elements as to this claim, the District Court should dismiss Grasso's claim of false imprisonment under Florida law.

## IV. CONCLUSION

In view of the foregoing, the undersigned respectfully **RECOMMENDS** that the District Court:

1.    **GRANT IN PART** and **DENY IN PART** Defendants' motion to dismiss, Doc. 45, as follows:

      a.  **DISMISS** with prejudice Grasso's official-capacity section 1983 claims against Varner and Gray.

      b.  **DISMISS** with prejudice Grasso's individual-capacity section 1983 claim regarding the arrest or detention of Grasso and the search of his vehicle.

    c.  **DISMISS** with prejudice Grasso's official- and individual-capacity claims of IIED and false imprisonment brought pursuant to Florida Law.

    d.  **DENY** Varner and Gray's motion in all other respects.

2.    Refer this action back to the undersigned for further proceedings regarding Grasso's surviving section 1983 (Fourth Amendment) individual-capacity claims against Varner and Gray regarding (a) the warrantless seizure and search of Grasso's cellular telephone; and (b) the warrantless search of Grasso's storage unit.

At Pensacola, Florida, this <u>30th</u> day of January, 2023.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**The District Court referred this case to the undersigned to address all preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636. The parties are also advised that if they dispute the accuracy of any facts taken from judicially-noticed**

**documents, or if they otherwise wish to be heard on the propriety of the court taking judicial notice of those facts, they must raise this issue in an objection to this report and recommendation.**