## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

MICHAEL GRASSO,

      Plaintiff,

v.                              Case No.  4:21-cv-310-WS/MJF

SCOTT POWELL,

      Defendant.

_____/

## **REPORT AND RECOMMENDATION**

Plaintiff Michael Grasso, proceeding *pro se*, asserts that Scott Powell—a former detective of the Wakulla County Sheriff's Office—violated the Fourth Amendment when Powell seized and searched Grasso's cellular telephone without first obtaining a warrant. Doc. 9 ¶ 27. Powell moves for summary judgment. Because Grasso has failed to demonstrate the existence of a genuine dispute as to any material fact regarding Powell's alleged seizure and search of Grasso's phone, and Powell is entitled to qualified immunity, the District Court should grant Powell's motion for summary judgment.

# I. BACKGROUND

## A.  The Facts from the Summary Judgment Record

### 1.  *The Theft of the Total Station*

On July 25, 2019, an employee of Ard Contracting Inc. ("Ard"), James Beard, contacted the FSU Police Department ("FSU PD") and reported that construction equipment, including a Sokkia Set 5 Total Station ("Total Station"),[1]  was stolen from a construction site on FSU's campus. Doc. 91-3 at 3–5; *see* Doc. 91-2 ¶ 3. FSU PD Investigator Tyler Varner was assigned to investigate the theft. Doc. 91-2 ¶ 3.

### 2.  *Grasso's Purchase of the Total Station*

In July 2019, Grasso utilized an online marketplace called "Offerup.com" to purchase items. Through Offerup, Grasso discovered that an individual named "Eddy D." was offering to sell the Total Station. Although he was not certain that the Total Station was stolen, Grasso knew the Total Station was "obviously . . . underpriced." Doc. 91-4 at 36:7–8; *see* Doc. 91-3 at 5. Prior to purchasing the Total Station, Grasso inspected the Total Station and noticed a calibration sticker, which he

---

[1] This is a type of survey equipment. Doc. 9 ¶ 1; Doc. 91-3 at 4.

knew usually had information about the company that owns or calibrates the equipment. Doc. 91-4 at 36:1–4, 10–11.

On July 29, 2019, Grasso purchased the Total Station because he would either "get somebody's equipment back for them" or get "a really good deal" on the Total Station. *Id.* at 36:12–17. After purchasing the Total Station, Grasso carefully inspected the calibration sticker and determined that Ard potentially had a possessory interest in the Total Station. Grasso immediately contacted Ard to determine whether the Total Station was stolen. *Id.* at 34:18–21, 36:23–37:9. An employee of Ard informed Grasso that the Total Station and other pieces of construction equipment had been stolen. *Id.* at 37:7–9. That employee suggested Grasso contact Beard for further information. Doc. 9 ¶ 5.

On July 31, 2019, Grasso arranged with Beard to meet at the Double A Coin Laundry and Self-Storage in St. Marks, Florida, so that Grasso could return the stolen Total Station and Beard could reimburse Grasso $150. Doc. 9 ¶ 11; Doc. 91-2 ¶¶ 4, 7; Doc. 91-3 at 5–6. Beard advised Varner about the meeting he had scheduled with Grasso. Doc. 91-2 ¶ 4; Doc. 91-3 at 5. Varner decided that he and another FSU PD investigator, Nicholas Gray, would meet with Grasso instead of Beard.

Doc. 91-2 ¶ 5; Doc. 91-3 at 5. Furthermore, because the location of the scheduled meeting was outside FSU PD's jurisdiction, Varner sought the assistance of the Wakulla County Sheriff's Office ("WCSO"). Doc. 91-1 ¶ 4; Doc. 91-2 ¶ 6. The WCSO assigned Powell to the case. Doc. 91-1 ¶ 4; Doc. 91-2 ¶ 6.

### 3.   *Powell's Meeting With Grasso*

On August 2, 2019, at 8:00 am, Grasso arrived at the agreed-upon location and approached Varner and Gray. Doc. 91-3 at 5; Doc. 91-4 at 39:17–18. Varner and Gray identified themselves as law enforcement officers and informed Grasso that they wanted to retrieve the Total Station. Doc. 91-1 ¶¶ 6, 7; Doc. 91-2 ¶ 7; Doc. 91-3 at 5; Doc. 91-4 at 39:6–8, 40:14–15. Powell then approached and identified himself as a law enforcement officer. Doc. 91-1 ¶ 6; Doc. 91-4 at 40:10–15. Varner and Gray requested that Grasso retrieve the Total Station, but Grasso refused. Doc. 91-1 ¶ 7; Doc. 91-2 ¶¶ 7–8; Doc. 91-3 at 5. Varner and Powell explained to Grasso that his refusal to return the Total Station was a criminal offense. Doc. 91-3 at 5; Doc. 91-1 ¶ 8. Grasso, however, refused to return the Total Station and told Varner to "arrest [Grasso] if [Varner] had to." Doc. 91-3 at 5. Powell then placed Grasso in handcuffs while

Varner and Gray continued to cajole Grasso to return the Total Station. Doc. 91-2 ¶ 8; Doc. 91-3 at 5.

Varner and Gray then searched Grasso's truck. Doc. 91-2 ¶ 9; Doc. 91-3 at 5; *see* Doc. 91-4 at 41:21–22. During this search, Varner and Gray found Grasso's cellular phone. Grasso initially did not consent to Varner and Gray searching his cellular phone. Doc. 94-1 at 43:2–9. At some point,[2] however, Grasso agreed to show Varner and Gray how to find the messages he received from Eddy D. Doc. 91-4 at 42:10–11. Grasso concedes that he agreed to show Varner and Gray the messages because he thought Varner and Gray were incompetent and not because law enforcement officers threatened to delete exonerating messages, threatened to harm Grasso, or physically harmed Grasso. Doc. 91-4 at 43:10–44:11, 45:7–13; *see* Doc. 91-1 ¶ 10; Doc. 91-2 ¶¶ 10–11. While Varner and Gray searched Grasso's cellular phone and truck, Powell was monitoring Grasso. Powell and Grasso were located a "few feet" away from Varner and Gray. Doc. 91-4 at 26:7–8, 30:10–13, 44:22.

---

[2] It is unclear how much time elapsed between Varner and Gray discovering the cellular phone and Grasso agreeing to show Varner and Gray messages from Eddy D. that were found on Grasso's cellular telephone.

### 4. *Grasso's Offer to Assist in The Investigation*

After conversing with Powell, Varner, and Gray for approximately twenty minutes, Grasso agreed to give the officers the Total Station. Powell removed Grasso's handcuffs. Doc. 9 ¶ 14; Doc. 91-1 ¶ 9; Doc. 91-2 ¶ 12; Doc. 91-3 at 6; Doc. 91-4 at 41:8–9. After Varner and Gray retrieved the Total Station, Grasso offered to assist the officers in their investigation of the theft. Doc. 91-1 ¶ 12; Doc. 91-2 ¶ 12; Doc. 91-3 at 6; Doc. 91-4 at 51:3–6. Grasso informed Varner, Gray, and Powell that he had arranged to purchase another piece of Ard's stolen equipment. Doc. 91-3 at 6. Grasso further explained that he was supposed to contact Eddy D. at 10:00 am to discuss the purchase of the other stolen equipment. *Id.*

Powell then took Grasso's cellular telephone from Varner and Gray and recommended that Grasso return to the WCSO's office to discuss whether Grasso could assist in the investigation. Doc. 91-1 ¶ 12; Doc. 91-2 ¶ 12; Doc. 91-3 at 6; *see* Doc. 91-4 at 46:18–22. Grasso agreed. Grasso and Powell drove separately to the WCSO office. Doc. 91-1 ¶ 12; Doc. 91-2 ¶ 13; Doc. 91-4 at 46:20–22. During this time, Powell retained possession of Grasso's cellular telephone because Powell wanted to

ensure that Grasso did not make unsupervised contact with Eddy D. Doc. 91-1 ¶ 12; Doc. 91-2 ¶ 13; Doc. 91-4 at 29:14–15.

### 5. *Powell's Actions at The WCSO's Office*

Upon arriving at the WCSO office, Grasso and Varner entered a conference room. Doc. 91-1 ¶ 13; Doc. 91-2 ¶ 14. Powell—still in possession of Grasso's cellular phone—went into a separate room with Captain Ed Wester of WCSO. Powell states that he did not search Grasso's cellular telephone. Doc. 91-1 ¶ 15. Grasso concedes that he has "no idea" whether Powell searched Grasso's cellular telephone Doc. 91-4 at 26:14–15, 48:17–22, 49:25–50:2. After approximately ninety minutes, Wester returned Grasso's cellular telephone to Grasso. Doc 91-4 at 50:8.

## B. <u>Grasso's Remaining Claims</u>

On November 19, 2021, Grasso filed a second amended complaint that asserted multiple claims against multiple defendants. Doc. 9. On July 8, 2022, and March 10, 2023, the District Court dismissed various claims because Grasso failed to state a claim upon which relief could be granted. Docs. 46, 60, 61. Furthermore, on June 6, 2023, Grasso moved to dismiss his remaining claims against Defendants Tyler Varner and Nicholas Gray. Docs. 83, 84. Therefore, Grasso has only two claims

remaining: (1) Powell violated the Fourth Amendment when he seized Grasso's cellular telephone without first obtaining a warrant; and (2) Powell violated the Fourth Amendment when he searched Grasso's cellular telephone without first obtaining a warrant. Doc. 9 ¶ 27.

## II. DISCUSSION

### A.   Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure states that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). An issue of fact is "material" if it could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S at 249. In evaluating a summary judgment motion,

all "justifiable inferences" must be resolved in the nonmoving party's favor so long as there is a genuine dispute as to those facts. *Beard v. Banks*, 548 U.S. 521, 529 (2006).

## B.    Qualified Immunity Standard

"Under the qualified immunity doctrine, government officials performing discretionary functions are immune not just from liability, but from suit, unless the conduct which is the basis for suit violates clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Sanders v. Howze*, 177 F.3d 1245, 1249 (11th Cir. 1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To be entitled to qualified immunity, the defendant must first establish that he was acting within the scope of his discretionary authority." *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017); *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013). The parties do not dispute that Powell was acting within his discretionary authority. Doc. 92 at 22–24. The burden, therefore, "shifts to the plaintiff to establish that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

In resolving questions of qualified immunity, courts engage in a two-pronged inquiry. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). At the summary judgment stage, a court must ask (1) "whether the facts, '[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right'" and (2) "whether the right in question was 'clearly established' at the time of the violation." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). District courts may "decide these issues in either order," but to survive a qualified-immunity defense, a plaintiff must satisfy both criteria. *Gaines*, 871 F.3d at 1208; *see Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Thus, if no constitutional violation is established, "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201; *Stanley v. City of Dalton*, 219 F.3d 1280, 1286 (11th Cir. 2000).

## C.  Grasso's Fourth-Amendment Claims

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. The Supreme Court has interpreted the Fourth Amendment generally to require government agents to obtain a search warrant prior to seizing or searching items and

places in which a person has a reasonable expectation of privacy, including cellular telephones. *Kentucky v. King*, 563 U.S. 452, 459 (2011); *Riley v. California*, 573 U.S. 373, 401 (2014).

> **1.  *Grasso Has Not Demonstrated The Existence of a Genuine Dispute as to Any Material Fact Regarding Powell's Seizure of Grasso's Cellular Telephone***

Powell argues that he is entitled to qualified immunity and Grasso has not demonstrated the existence of a genuine issue of material fact as to Grasso's claim that he seized Grasso's cellular telephone in violation of the Fourth Amendment.[3] Doc. 92 at 16–24. Powell asserts that the presence of probable cause and exigent circumstances warranted his seizure of Grasso's cellular telephone. *Id.* at 20. Grasso has not responded to these arguments despite the undersigned urging him to do so.

Under the Fourth Amendment, "[a] seizure of property occurs when there is a 'meaningful interference' with a person's possessory interest in

---

[3] Because Varner or Gray already had seized Grasso's cellular telephone, it is doubtful that Powell's actions also constitute a seizure of Grasso's cellular telephone for purposes of the Fourth Amendment. *See Fox v. Van Oosterum*, 176 F.3d 342, 351 (6th Cir. 1999) (explaining that "[o]nce the act of taking the property is complete, the seizure has ended and the Fourth Amendment no longer applies"). Nevertheless, for purposes of the analysis below, the undersigned assumes—consistent with Grasso's claim—that Powell seized Grasso's cellular telephone.

it." *Crocker v. Beatty*, 886 F.3d 1132, 1136 (11th Cir. 2018). In general, "the seizure of personal property is *per se* unreasonable" unless the seizure is "pursuant to a warrant issued upon probable cause." *Id.*; *United States v. Virden*, 488 F.3d 1317, 1321 (11th Cir. 2007). There are exceptions to this rule, however. "[T]he Supreme Court has interpreted the Fourth Amendment to allow a warrantless seizure when police can show both (1) probable cause to believe that property contains contraband or evidence of a crime and (2) an applicable warrant exception, such as exigent circumstances." *United States v. Babcock*, 924 F.3d 1180, 1186 (11th Cir. 2019); *United States v. Pantoja-Soto*, 739 F.2d 1520, 1523 (11th Cir. 1984) ("When exigent circumstances coexist with probable cause, the Fourth Amendment has been held to permit warrantless searches and seizures.").

### (a).  The Existence of Arguable Probable Cause

"Probable cause exists when under the 'totality-of-the circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991). That is, "probable cause exists where the facts within the collective knowledge of law enforcement officers . . .

are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Gates v. Khokhar*, 884 F.3d 1290, 1298 (11th Cir. 2018). Even when probable cause is lacking, an officer is entitled to qualified immunity in cases "involving warrantless searches or seizures . . . if the [officer] had even arguable probable cause." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1251 (11th Cir. 2013). Arguable probable cause exists where "reasonable officers in the same circumstances and possessing the same knowledge as [] Defendants could have believed that probable cause existed." *Id.* (quoting *Swint v. City of Wadley*, 51 F.3d 988, 996 (11th Cir. 1995)).

Here, the undisputed facts reflect that at the time Powell seized Grasso's cellular phone, Powell had at least arguable probable cause—if not probable cause—to believe that a crime had been committed and that Grasso's cellular phone had evidence of the crime.[4] These undisputed facts include the following:

---

[4] The undersigned advised Grasso that to withstand summary judgment Grasso was required to demonstrate the existence of a genuine dispute of material fact. Doc. 93. The undersigned also provided Grasso two opportunities to file a response to Powell's motion for summary judgment. *Id.*; Doc. 95. Grasso did not respond in opposition to Powell's motion for summary judgment. *See* Doc. 96 ¶¶ 2–4 (confirming that Grasso did not

- Grasso "obviously knew" the Total Station was underpriced and considered the Total Station may have been stolen when he purchased it,[5] Doc. 91-4 at 36:7–17;

- Grasso knew that if the property was stolen, it was possible that he would receive payment for returning the stolen property, Doc. 91-4 at 52:2–8;

- Upon learning the equipment was stolen, Grasso did not contact law enforcement to report that he was in possession of stolen property, Doc. 91-4 at 36:20–21;

- On July 31, 2019, Varner arranged to make a controlled buy of Ard's stolen construction equipment from Eddy D., Doc. 91-3 at 5;

- Grasso was aware of the controlled buy, Doc. 9 ¶ 5;

- The controlled buy did not occur because Eddy D. somehow learned of the controlled buy, Doc. 91-4 at 38:13–14;

- Eddy D. contacted Grasso and advised Grasso that Eddy D. was fleeing to Atlanta, Georgia, Doc. 9 ¶ 6; *see id.* ¶ 7;

- On July 31, 2019, Grasso agreed to meet up with Beard and return the Total Station in exchange for $150, Doc. 9 ¶ 11, Doc. 91-3 at 5;

---

respond to Powell's motion for summary judgment because Grasso intended to rely solely on the allegations of his pleadings).

[5] "Proof of the purchase or sale of stolen property at a price substantially below the fair market value, unless satisfactorily explained, gives rise to an inference that the person buying or selling the property knew or should have known that the property had been stolen." Fla. Stat. § 812.022(3).

- On August 2, 2019, when law enforcement officers met with Grasso and asked Grasso to return the Total Station, Grasso refused,[6] Doc. 91-1 ¶ 7, Doc. 91-2 ¶ 8, Doc. 91-3 at 5;

- Varner and Powell explained that the failure to return the property was criminal in nature, but Grasso still refused to return it, Doc. 91-1 ¶ 8, Doc. 91-3 at 5;

- Grasso initially was uncooperative with the officers during the encounter, Doc. 91-1 ¶ 7, Doc. 91-2 ¶ 8, Doc. 91-3 at 5;

- After twenty minutes of discussion, Grasso gave the officers the Total Station, Doc. 91-1 ¶ 10, Doc. 91-2 ¶ 11, Doc. 91-3 at 5;

- Grasso eventually showed Varner and Gray messages on Grasso's cellular phone between Grasso and Eddy D. regarding Grasso's purchase of the Total Station, Doc. 91-1 ¶ 10, Doc. 91-2 ¶ 11, Doc. 91-3 at 5;

- Grasso admitted that he planned to purchase additional construction equipment that belonged to Ard from Eddy D. knowing that those items were stolen, Doc. 91-3 at 6; and

- Grasso admitted that later that same day, at around 10:00 am, Grasso was going to contact Eddy D. to discuss purchasing additional stolen construction equipment. Doc. 91-3 at 6; *see* Doc. 91-1 at ¶ 12.

In light of these undisputed facts and others, Powell reasonably could

believe that Grasso violated Fla. Stat. § 812.014 and that the messages

---

[6] "Proof of possession of property recently stolen, unless satisfactorily explained gives rise to an inference that the person in possession of the property knew or should have known that the property has been stolen." Fla. Stat. § 812.022(2).

Page 15 of 21

between Grasso and Eddy D. on Grasso's cellular phone were evidence of

that crime.[7]

### (b).  **The Existence of Exigent Circumstances**

Powell also argues that his seizure of Grasso's cellular telephone

did not violate the Fourth Amendment because exigent circumstances

existed, namely, Grasso was a suspect in the case and could have deleted

the messages or interfered in the investigation by contacting other

suspects. Doc. 92 at 20, 22.

"Exigent circumstances . . . arise when 'the inevitable delay

incident to obtaining a warrant must give way to an urgent need for

immediate action." *Feliciano*, 707 F.3d at 1251. Exigent circumstances

sufficient to seize evidence without a warrant include the "imminent

destruction of evidence." *Minnesota v. Olson*, 495 U.S. 91, 100 (1990);

*Crocker*, 886 F.3d at 1136. In determining whether there is a risk of

imminent destruction of evidence, the relevant inquiry is whether the

_____

[7] Section 812.014 states that "a person commits theft if he . . . knowingly
obtains or endeavors to obtain or to use, the property of another with
intent to, either temporarily or permanently deprive the other person a
right to the property or a benefit from the property [or] appropriate the
property to his . . . own use to the use of any person not entitled to the
use of the property."

facts of a particular case would have led "a reasonable, experienced agent to believe that evidence might be destroyed before a warrant could be secured." *Crocker*, 886 F.3d at 1136 (quoting *United States v. Young*, 909 F.2d 442, 446 (11th Cir. 1990)). Thus, there must be an "'objectively reasonable basis' for deciding the imminent action was required." *Id.*

In assessing whether a reasonable, experienced officer might believe the evidence could be destroyed before a warrant could be secured, courts have considered whether the property to be seized is in "the possession of a person it could implicate in a crime" or merely in the possession of a bystander. *Id.* (noting that when the evidence is in the possession of a person it may inculpate in a crime, there is a higher risk of destruction of evidence and, therefore, more likely a showing of exigent circumstances); *Babcock*, 924 F.3d at 1194 (noting that the fact that the phone belonged to a suspect—and not a mere bystander—supported officer's belief that evidence would be destroyed before a warrant could be obtained). Courts also have considered whether the person from whom property was taken admitted that his property contained evidence or contraband. *United States v. Morgan*, 713 F. App'x 829, 831 (11th Cir. 2017) (concluding that a defendant's "admission that his property

contains contraband enhances the government's legitimate interest in maintaining custody of the property as substantial evidence of" a crime.). Furthermore, courts have considered whether the suspect could instruct co-conspirators or accomplices to destroy evidence. *See generally United States v. Martinez*, 191 F. App'x 856, 859 (11th Cir. 2006) (exigent circumstances existed when the defendant realized that a drug deal had failed and he could have used his cellular telephone to order the destruction of evidence); *United States v. Collins*, 437 F. App'x 760, 761 (11th Cir. 2011) (exigent circumstances existed when a suspect could have used his cellular telephone to order accomplices to destroy evidence).

Grasso conceded that his cellular telephone contained evidence of "conversations" he had with Eddy D. regarding Grasso's purchase of the Total Station *and* Grasso's attempts to purchase addition stolen materials from Eddy D. Doc. 91-3 at 5. Furthermore, before Powell took possession of Grasso's cellular telephone, Grasso was agitated and initially refused to cooperate with law enforcement officers. Doc. 91-1 ¶ 7; Doc. 91-2 ¶ 8; Doc. 91-3 at 5.

Based on these undisputed facts, a reasonable officer could have believed that Grasso—a suspect in the theft of the Total Station:

- would delete incriminating evidence from his cellular telephone; and

- would alert Eddy D. of the investigation, which might cause Eddy D. to destroy evidence.

For this reason, too, Powell's seizure of Grasso's cellular telephone did not violate the Fourth Amendment.

Because, based on the undisputed evidence, Powell possessed at least arguable probable cause to believe that Grasso's cellular telephone contained evidence of a crime and exigent circumstances existed, Grasso has not demonstrated the existence of a genuine dispute regarding his claim that Powell violated the Fourth Amendment when he seized Grasso's cellular telephone. Powell, therefore, is entitled to summary judgment on this claim.

### 2. *Grasso Has Not Demonstrated The Existence of a Genuine Dispute as to Any Material Fact Regarding Powell's Alleged Search of Grasso's Cellular Telephone*

Powell next argues that Grasso failed to create a genuine dispute as to any material fact regarding Grasso's claim that Powell searched Grasso's cellular telephone. Doc. 92 at 10.

The undisputed evidence reflects that Powell did not search Grasso's cellular phone. Doc. 91-1 ¶¶ 14–15; Doc. 91-2 ¶ 14; Doc. 91-3 at 6. Indeed, Grasso himself repeatedly conceded that he had "no idea" whether anyone searched his cellular telephone, much less Powell. Doc. 91-4 at 48:17–19, 49:25–50:2; *see id.* at 26:14–15. Grasso's position is that because Powell "could have" searched Grasso's cellular phone, Grasso "assume[s]" Powell did so. *Id.* 47:20–21, 48:15–17. Grasso's belief and assumptions are insufficient to create a genuine dispute as to a material fact. *Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). "Speculation, conjecture, or conclusory statements from a party cannot create a genuine issue of material fact." *Wade v. Daniels*, 36 F.4th 1318, 1331 (11th Cir. 2022). Powell, therefore, is entitled to summary judgment on this claim.

## III. CONCLUSION

Because Grasso has failed to demonstrate the existence of a genuine dispute as to any material fact, and Powell is entitled to qualified immunity, the undersigned respectfully **RECOMMENDS** that the District Court:

1.   **GRANT** Defendant Scott Powell's motion for summary judgment, Doc. 92;

2.   **DIRECT** the clerk of the court to enter judgment in favor of Defendant Scott Powell and close this action.

At Pensacola, Florida, this <u>29th</u> day of March, 2024.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**The District Court referred this case to the undersigned to make recommendations regarding dispositive matters.** *See* **N.D. Fla. Loc. R. 72.2;** *see also* **28 U.S.C. § 636(b); Fed R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation.** <u>**Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.**</u> **An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in this report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**